IN THE

# SUPREME JUDICIAL COURT,

IN THE

# COUNTY OF PENOBSCOT.

ARGUED AT JULY TERM, 1844.

SAMUEL G. OAKES *versus* CYRUS MOORE *& al.*

The word *lien*, in common parlance, is somewhat indefinitely used, as if it embraced every species of special property which one may have in goods, the general ownership of which is in another. It originally, and more appropriately, was used to *signify the right of detention which artisans and others*, who had bestowed labor upon an article, or done some act in reference to it, had, in some instances, of a right of detention thereof till reimbursed for their expenditures and labor bestowed thereon. Such may be termed a lien at common law.

In cutting and removing *timber from the land of another*, at an agreed price, and for the purpose of being sawed into boards, no lien, without a special contract therefor, can be acquired.

In the cases of liens of the above description, as at common law, in order to the continuance of the lien, it was and is indispensable, that it should be accompanied by possession. The moment that possession is voluntarily surrendered, the lien is gone.

Where one contracts with the proprietors of land to cut timber therefrom and deliver it at a place appointed, to be sawed into boards, for an agreed price per thousand feet, to be paid at different times after the work should be completed, *" said logs to be holden to said O. (the contractor) until all is paid, or satisfactory security given; "* this is rather in the nature of a mortgage, than of a lien, and the claim of the contractor upon the logs, will not be lost by his suffering them to go into the possession of the proprietors of the land, subject to his right to resume it, in case of non-payment according to the contract.

And if the contractor permits the logs to go into the possession of the proprietors of the land, to be sawed into boards, with an expectation, raised by them, that he should have the avails of it to the extent of his claim,

Oakes v. Moore.

and they disappoint him in that expectation, they will not be permitted to come into Court and say, that he has thereby relinquished his right to regain the possession.

Where a contract is made whereby one party engages to cut and haul timber from land of the other at a stipulated price per thousand feet, " to be estimated by P. (a surveyor named) and cut to his satisfaction," the parties are bound by his estimate, it not appearing that such surveyor acted corruptly, or made any gross mistake.

TROVER for a quantity of pine logs. The whole evidence given at the trial, the objections raised to the right of the plaintiff to recover, and the ruling and instructions of the presiding Judge, all appear in the exceptions. The law of the case, on the view taken by the Court, will be understood, without any more particular statement of the facts, than will be found in the instructions to the jury, and in the opinion of the Court.

By the agreement between the plaintiff and Jefferds, assuming to be the agent of the proprietors, the plaintiff was to cut a large quantity of pine timber, on a township of land, and drive it to the boom near Oldtown, in a certain manner, and if he neglected, he would " pay the proprietors, should they drive for him." The agreement provides, that the plaintiff should be paid $3,50 per thousand, board measure, for cutting, hauling and driving the logs, " to be estimated by said Pond and cut to his satisfaction, and to be scaled at the landing on said township, where the logs are deposited." The agreement contains this stipulation : — " The said Jefferds further agrees, that the said Oakes shall receive one third part pay for hauling and driving on the delivery of said logs at the Pea Cove Boom, one third in thirty days, and one third in sixty days, *said logs to be holden to said Oakes until all is paid, or satisfactory security given.*" By the contract between Moore, as agent for the proprietors, and Paine, the latter was to take the logs from the boom, saw them, and run the boards to Bangor.

The bill of exceptions concludes as follows : —

The defendants' counsel insisted, that the written contract between Moore and Paine, and the delivery of the logs in

pursuance of its provisions by the plaintiff, deprived Moore of the possession of the logs, and was such as to prevent him from resuming it; and therefore this action could not be maintained; but if otherwise, yet the refusal of Moore to deliver the logs on demand of the plaintiff, would not make Wilcox, the other defendant, liable, unless he gave direction to Moore to refuse to deliver them; and that every alteration in the contract, under which the plaintiff cut and hauled the logs, was a waiver on his part of his lien.

TENNEY J. presiding at the trial, instructed the jury, that the plaintiff must have had the possession of the property, or the right of immediate possession, in order to maintain this action. That the contract between Moore and Paine, if the plaintiff delivered the lumber to Paine in pursuance of its provisions, did not give Paine the control of the logs against Moore, although, if Moore took them, he might be liable, to the extent of the price of sawing them, to Paine. That so far as Moore had the lumber under his control, unless the lien was waived, his refusal to deliver them on the plaintiff's demand was evidence of a conversion by him, but that refusal was insufficient to render his principal liable, unless the principal directed or in some way sanctioned it; but that notice to the agent of the claim and demand was a notice to and a demand of the principal, and if after the refusal of the agent the principal made use of the logs, it was a conversion by the latter. That the plaintiff's lien would be annulled by an express agreement to that effect, or by any agreement which would be inconsistent with that which created it, so far as the lien was concerned; but a modification which was intended to produce the money, with which to pay the plaintiff, and which modification had no reference to the lien, and was not inconsistent with its continuance, would not discharge it. That the question of the waiver of the lien was to be determined by ascertaining the intention of the parties. That if the plaintiff agreed that the lumber should be sold unconditionally, and he to receive the proceeds so far as the lumber was sold in pursuance of such agreement,

the lien would be discharged and the defendants would not be guilty of a conversion of the lumber so sold. But if it were intended by the parties, that the lumber unsold should continue charged with the lien, a refusal to deliver such on demand was evidence of a conversion in the one who refused; but there would be a liability no farther than the value of such lumber unsold. That the survey of Pond was conclusive, unless the jury were satisfied that he was guilty of fraud in the survey, or unless he acted under a misapprehension of a material fact, such for example as estimating lumber which grew on another tract. That an error in judgment in estimating the timber, or determining whether the timber came within the terms of the contract, could not be corrected by the jury. The defendants' counsel requested the presiding Judge to instruct the jury, that if they believed that Oakes and Moore made the contract according to the testimony of Ivory Jefferds, the plaintiff could not recover. The Judge declined doing this, but instructed them, that if, from all the testimony in the case touching that question, they were satisfied, that it was the intention of the parties, that the lien should be waived, or that any agreement was made inconsistent with its continuance, they would find for the defendants. The jury returned a verdict for the plaintiff, and the defendants filed exceptions to the instructions given by the Judge.

*Kent* and *A. G. Jewett* argued for the defendants.

In support of their position, that the lien of the plaintiff was dissolved by a voluntary surrender of the logs, and delivery of them over into the possession of the owners, or their agents, they cited 6 East, 27; 15 Mass. R. 396; 12 Pick. 81; 4 Campb. 291; 14 East, 308; 1 Atk. 234; 7 Taunt. 14. That Paine had a right to retain possession of the logs until his contract was fulfilled. *Townsend* v. *Newell*, 14 Pick. 332; 2 Kent, 586; Story on Bailm. § 394, 395, 424; 3 Verm. R. 302; 8 Pick. 75. That the action of trover could not be maintained, as Paine had the right to the possession under his contract, when the action was commenced. 3 Greenl. 183;

13 Pick. 294; 3 Pick 258; 7 T. R. 9; 9 Pick. 156; 22 Pick. 535.

*J. Appleton* and *G. F. Shepley* argued for the plaintiff. On the point, that the instruction requested was rightfully refused, because it was predicated on the testimony of one witness, assuming it to be true, when it was in conflict with other evidence, and when the story was in itself improbable, they cited 17 Peters, 20. The objections made by the defendants to the instructions, they contended, were grounded on a misconception of what the instructions were. The argument assumes that the plaintiff assented to the contract between Moore and Paine, when the jury have found, under the instructions, that he did not. The possession of Paine was the possession of the plaintiff, and not of the proprietors of the land. The principal is liable to third persons for the acts of his agent, in a civil action. Story's Ag. § 451, 452; 7 Bingh. 543; 1 Moore & P. 448. And notice to the agent is constructive notice to the principal. Story's Ag. § 140.

The opinion of the Court was by

WHITMAN C. J. — Exceptions are taken to the Judge's instructions to the jury, in general terms, without pointing out any part in particular, which is deemed erroneous. This mode of taking exceptions may be very convenient, so far as the counsel are concerned, as it leaves them to find out, at their leisure, in what particular, if any, the instructions are erroneous. To the Court, nevertheless, it may be somewhat inconvenient, as it will not be apprised of any casual mistake or omission, into which it may, in the hurry of a trial, have been momentarily led, in season to correct or supply it. It may be doubtful whether the Court should in such case consider a party aggrieved, so as to be entitled to have exceptions so taken allowed. At common law it would be necessary that the particular ground of exception should be designated, and in season to put the Court upon consideration of the supposed error, so that it might be corrected in time to prevent an improper effect from it. Possibly the statute, providing for the

taking of summary exceptions, may admit of the mode adopted in this case; and we proceed to the consideration of the Judge's instructions as reported. In doing this we do not propose to notice minutely the particular grounds of exception upon which the counsel, in their arguments, have insisted. It will suffice that we take a general view of the case, such as shall substantially amount to a reply to the questions raised.

The plaintiff claims to have had, what he terms, a lien upon the logs, to recover the value of which, this action was instituted. The word lien, in common parlance, is somewhat indiscriminately used, as if it embraced every species of special property, which one may have in goods, the general ownership of which is in another. It originally, and more appropriately, was used to signify the right of detention, which artizans and others, who had bestowed labor upon an article, or done some act in reference to it, had, in some instances, of a right of detention thereof till reimbursed for their expenditures and labor bestowed thereon. Such may be termed a lien at common law. The lien, if it may be termed such, upon which the plaintiff must rely, is not one of this description. In cutting and removing timber from the land of another, at an agreed price, and for the purpose of being sawed into boards, no lien, without a special contract therefor, can be acquired. In the cases of liens of the above description, as at common law, in order to the continuance of the lien, it was and is indispensable, that it should be accompanied by possession. The moment that possession was voluntarily surrendered, the lien was gone. And the authorities cited by the counsel for the defendant are conclusive upon this point; but may be wide of touching the case at bar.

It seems to be admitted, in the arguments of the counsel, that the plaintiff had a lien. If he had, it is important to see how it arose, and, what the particular nature of it may have been. We have seen that it could not have been a lien at common law; and neither party contends that it was. If it existed, then it arose upon a special contract; a contract, which was entered into by the plaintiff with one Jefferds, act-

ing as agent for the proprietors of the land, from which the timber in question was taken, and therein we find a stipulation to such an effect was contained. Although Jefferds now says, that he was not authorized to pledge the timber as security for the pay·for cutting and removing it, the evidence does not show that the owners ever gave the plaintiff any seasonable notice of their dissatisfaction with this particular stipulation in the contract; nor did they in their instructions to Moore, in April, 1836, notice any such objection. They may, therefore, well be considered as having ratified it. This stipulation will be found· to have created, what may be more properly termed, a mortgage, than a mere lien; for it is manifest, that actual possession by the plaintiff was not to be continued; and that the logs were intended to go into the possession of the general owner, subject to the right of the plaintiff to resume it in case of non-payment for his labor, &c. as had been agreed upon. The stipulation for a term of credit therefor, is clearly indicative of such an understanding between the parties; and it might be inferred from the well known character of such transactions. The term of credit was given for some purpose; and may well be believed to have been given to enable the general owner to avail himself of funds to meet his liabilities from the sale, or other disposition, of the timber.

The plaintiff, then, having parted with his possession of the logs, after having performed his contract in reference to them, might or might not resume it upon the expiration of the terms of credit. If he saw that the owners were conducting in a manner affording a reasonable prospect of his availing himself of payment, as soon as his necessities would require it, he might suffer them to continue their possession. In this case, it would seem, that he witnessed the negotiation between their agent and Paine, and saw that it was an arrangement professedly made, with a view to enable them to make payments to him; and doubtless expected to realize therefrom the whole amount due him. He accordingly seems to have waited till the termination of that contract, and, not finding his expectations realized, demanded and sought to regain possession of

the logs. We do not see but he might well do so. He had not, in express terms, relinquished his right to the timber as secured by his contract; and if he looked on, and saw the owners making arrangements to dispose of it, it cannot be doubted, but that it was with an expectation raised by them, that he should have the avails of it to the extent of his claim. They, having disappointed him in this expectation, should not be permitted now to say, that he has relinquished his right to regain possession; nor to withhold from him the value of the timber to the extent of his first demand. No demand, as evidence of a conversion, would seem to have been necessary; for an actual conversion seems to have been abundantly proved. The defendant, Moore, has undertaken, in his contract with Paine, to deal with the timber as being the property absolutely either of himself, or of Wilcox and others; and, moreover, the defendants now dispute the right of the plaintiff to any claim upon it. Whether a demand of the timber, therefore, was made upon the agent, or upon the principals, it does not seem important to inquire.

The instructions, in reference to the survey of the timber by Pond, were not erroneous. He had been mutually agreed upon by the parties to perform that service. They should, therefore, be concluded by what he did, as it did not appear that he acted corruptly, or made any gross mistake.

The supposed mistake, noticed by one of the counsel for the defendants, in ascertaining the amount due to the plaintiff, does not come before us upon this bill of exceptions, and cannot therefore be noticed.

*Exceptions overruled.*