ARTHUR G. SAWYER *vs.* ALBERT GERRISH.

Penobscot. Opinion October 10, 1879.

*Contract—lien on future offspring.*

The plaintiff's mare was served by the defendant's stallion for the purpose of raising a colt, whereupon the plaintiff agreed in writing to pay the defendant twenty dollars twelve months after date if his mare proved with foal, "colt holden for payment." *Held*, that the written agreement created a contract-lien in the nature of a mortgage.

ON FACTS AGREED.

Replevin for a three-year-old colt, described in the writ.

In 1874 defendant owned a certain stallion kept for breeding purposes, called "Mohawk." Said stallion was duly registered, as required by public laws 1873, c. 135.

On the 24th day of August, A. D. 1874, Elisha Sawyer, plaintiff's intestate, took a mare which he then owned, to said stallion, and had her duly served, whereupon he gave to defendant his promissory note therefor, in words and figures as follows:

"$20.00.                                    AUGUST 24, 1874.

12 months after date I promise to pay to the order of Albert Gerrish, or bearer, if my mare prove with foal, twenty dollars, value rec'd, use of horse Mohawk. Colt holden for payment. If mare is disposed of, considered with foal.

ELISHA SAWYER."

The following season said mare was duly delivered of a foal, the product of said service.

The note has never been paid, though often demanded.

In the fall of 1878, defendant took possession of said colt, the product as aforesaid of his horse and said mare, said colt being then three years old, claiming a lien upon it by virtue of the stipulation in the aforesaid note, which says, "Colt holden for payment," and claimed said right of possession until the note and expenses of keeping were paid.

Whereupon plaintiff, his said intestate having in the meantime deceased, without making tender of any amount, denied the defendant's right to hold said colt, and brought this action.

If the defendant's lien was valid, plaintiff to become nonsuit and judgment to be ordered for a return.

*F. Hamblen*, for the plaintiff.

*C. A. Bailey*, for the defendant.

VIRGIN, J. It would seem that if the defendant had sent his mare to the plaintiff for the purpose of raising a colt from the latter's stallion, the defendant would have had, at common law, a lien upon her for the use of his horse, so long as he retained possession of the mare. *Scarfe* v. *Morgan*, 4 Mees. & W. 270; and perhaps upon the foal since *partus sequitur ventrem*, 2 Black. Com. 390. *Allen* v. *Dinsmore*, 55 Maine, 113. But no such question is raised here.

Neither does the case present any question of common law lien upon the colt. The defendant on the contrary claims a contract-lien upon the colt alone, by virtue of the written contract between the parties entered into after the service rendered had been completed and the colt had a potential existence.

It is well settled that the owner of personal property having a potential existence may sell it. *Grantham* v. *Hawley*, Hob. 132, 2 Kent's Com. 468 and note g, 492 note 1, c. *Farrar* v. *Smith*, 64 Maine, 77. And within this principle, the owner of a mare may, during gestation, sell her future offspring, which will vest in the vendee when parturition takes place. *McCarty* v. *Blevins*, 5 Yerg. (Tenn.), 195.

Doubtless the plaintiff, by his written contract with the defendant, intended to give him a claim of some kind upon the foal for the service of the defendant's horse, "if the mare proved with foal," of which she "was delivered the following season," "the product of the service."

What was that intention as declared by the terms of the agreement? The agreement should receive such a construction *ut res valeat et non pereat*, provided that construction be a reasonable one.

The plaintiff owned the mare and the offspring in the absence of any sale. The defendant never owned either; but they were both the unincumbered property of the plaintiff's intestate except

so far as the title of the colt, was affected by the written agreement of the parties thereto. No possession, even, was ever had of the colt, by the defendant, until he took it a short time before the colt was replevied in 1878, about the time it was three years old. The case is, therefore, unlike that class of cases in which the owner parted with the possession of certain personal property, on a contract for sale, but retained the title until the price agreed on was paid.

The real transaction was simply—the plaintiff's intestate gave his promissory note to the defendant in consideration of the "use of" the defendant's stallion, payable "twelve months after date" provided his mare proved with foal, and gave security on the foal, for payment. The condition of the promise has been fulfilled and we think the promise should be.

Our opinion is that the contract was in the nature of a mortgage; and the case not distinguishable in principle from *Oakes* v. *Moore*, 24 Maine, 214, 220. The result is

*Plaintiff nonsuit.*
*Judgment for return.*

APPLETON, C. J., BARROWS, DANFORTH, PETERS and SYMONDS, JJ., concurred.