ROY BRIDGEWATER, RESPONDENT, v. GENERAL EXCHANGE INSURANCE CORPORATION, APPELLANT.—131 S. W. (2d) 220.

Kansas City Court of Appeals. July 3, 1939.

*Allen M. Fisher* and *Walter J. Gresham* for appellant.

*Alva F. Lindsay* for respondent.

KEMP, J.—This is a suit on an automobile fire insurance policy. Upon a trial of the case, the jury returned a verdict for plaintiff in

the sum of $576.04, upon which judgment in like sum was duly rendered. From this judgment defendant appeals.

We shall, in the course of the opinion, refer to appellant as defendant and respondent as plaintiff.

On November 5, 1935, plaintiff purchased a used Buick automobile. On the same day defendant issued to plaintiff its policy of insurance for a term ending May 5, 1937, with coverage including loss from fire. The policy recited a mortgage on the automobile in favor of General Motors Acceptance Corporation in the sum of $579.68.

On February 15, 1937, while plaintiff was operating said automobile on the highway, it caught fire and burned, to the extent that thereafter it had only junk value, estimated to be from $25 to $35.

There was a substantial amount of testimony tending to explain how the fire may have been occasioned, but defendant raised no point as to the cause of the fire, hence it is unnecessary to narrate the facts with respect thereto.

On September 5, 1936, plaintiff executed and delivered to Florence Sprague an installment note in the principal amount of $400, secured by a mortgage on said automobile. On October 4, 1936, plaintiff executed and delivered to the Morris Plan Company an installment note in the principal sum of $275, secured by a mortgage on said automobile. The insurer knew of neither of these transactions until after the automobile had burned.

Plaintiff testified that Mrs. Sprague had purchased some furniture and had given a note therefor secured by a chattel mortgage on the furniture, and that his note to Mrs. Sprague was given to her to be used as additional security for her said furniture loan. He testified that the proceeds of the loan from the Morris Plan Company were used to pay off the General Motors Acceptance Corporation loan which was described in the policy of insurance. Plaintiff testified that the General Motors Acceptance Corporation loan had been reduced by payments to $212, but that he had paid nothing on the Sprague loan. At the time of the trial, however, he testified that Mrs. Sprague's furniture loan, for which said Sprague mortgage was executed as additional security, was paid off, but the record fails to disclose the date of the alleged payment nor is there any testimony in the record to the effect that it was paid *at the time the loss occurred.*

The day following the fire plaintiff made claim for said loss. Two or three days thereafter a man who said his name was Campbell, and that he represented the company, discussed this loss with plaintiff and had plaintiff make out a statement with respect thereto. At this time plaintiff stated over his signature that "there is nothing against the car at present." Three or four days later this same

Mr. Campbell made a second visit to plaintiff, in which he told the plaintiff that he had discovered the aforementioned mortgages against the car to be of record in the office of the recorder of deeds. Plaintiff first testified that Campbell told him because of these mortgages the policy was void, but on cross-examination plaintiff stated that Campbell told him the company could not pay this claim because of the following provision in the policy which he there read to plaintiff, to-wit:

"Lien or Incumbrance. Unless otherwise provided by agreement in writing added hereto, and except as to any lien, mortgage or other incumbrance specifically set forth and described in the Schedule of Warranties on Page 1 of this policy, this company shall not be liable for loss or damage to any property insured hereunder while subject to any lien, mortgage or other incumbrance."

Thereupon, according to plaintiff's testimony, he said, "Well, I have some premium coming and I will claim it," to which Campbell replied, "I will see about it." Plaintiff testified that the company had never offered to pay him an sum of money by way of return of premium or any part of the premium from that time until after suit was brought. He testified that, "I never heard another word from the insurance company from the time that adjuster was there. It was a closed incident right then so far as they were concerned."

The cancellation clause of the policy provided in part that:

"This policy shall be cancelled at any time at the request of the Assured, in which case the company shall, upon demand and surrender of this policy, refund the excess of paid premium above the customary short rate premium for the expired term."

The policy was never surrendered.

On February 19, 1937, the attorney who, in the following September was, and now is, representing plaintiff in the present case, wrote a letter to the defendant company as the attorney for Mrs. Sprague, in which he advised the company of the Sprague chattel mortgage, and further stated:

"If my client is not otherwise protected under this policy and other arrangements are not made, we of course wish to institute proceedings to protect her interests. Your local representative has advised me we will be given an opportunity, but I have felt it desirable to give you notice of our claim."

The original petition in this case was filed on September 16, 1937. On October 4, 1937, defendant filed a demurrer, which was overruled on November 6, 1937. On November 16, 1937, defendant filed its answer, where in "without admitting the necessity therefor" it tendered back to plaintiff the unearned premium, depositing same with the clerk of court. The answer alleged the existence of the two mortgages upon the car and that same had not been satisfied and were then outstanding at the time of the fire loss, and that by virtue

of the provisions of the policy with respect to the existence of liens and encumbrances not noted in the policy and not consented to in writing by the company, the loss did not come within the terms of said policy. This was the sole pleaded defense. The reply was a general denial. There was no acceptance of tender of the unearned premium.

Upon trial of the case, and at the conclusion of the evidence offered on behalf of plaintiff, defendant requested a peremptory instruction in the nature of a demurrer to the evidence, which the court refused. Defendant offered no testimony but stood on its demurrer.

Defendant first assigns as error the court's refusal of its peremptory instruction. As above noted, the policy contained a provision excluding liability of the company for loss or damage to the property insured thereunder "while subject to any lien, mortgage or other incumbrance" other than such as is specifically described in the policy or "otherwise provided by agreement in writing added hereto." Under such a provision the placing of a mortgage on plaintiff's automobile subsequent to the issuance of the policy and without knowledge or consent of the defendant would not render the policy void; it would merely relieve the insurer of liability for any loss or damage which might occur during the existence of such mortgage. Immediately upon the release of such mortgage, if effected during the term of the policy, the insurer's liability for loss or damage to the automobile would again attach.

In the instant case there were two mortgages placed upon the automobile subsequent to the issuance of the policy and without any notice to, or agreement with, defendant company with respect thereto. The proceeds from the Morris Plan mortgage, securing a note for $275, were used for the purpose of paying off the balance of the note secured by the General Motors Acceptance Corporation mortgage which *was* described in the policy. While the Morris Plan mortgage was an existing mortgage on the car at the time of the fire and was not described in the policy, it nevertheless was merely a substitute for, or, in effect, a renewal of the General Motors Acceptance Corporation mortgage described in the policy. It was given to secure the identical indebtedness as reduced by installment payments, that had been originally secured by the mortgage described in the policy. Under such circumstances, the existence of the Morris Plan mortgage at the time of this fire loss, does not relieve the defendant of liability therefor under any reasonable interpretation of the terms of the policy. [Dougherty v. German American Ins. Co., 67 Mo. App. 526, l. c. 532.]

The Sprague mortgage, however, comes clearly within the mortgage clause of the policy which, by express terms, relieves defendant of liability for loss or damage to the automobile for the period the mortgage remains in effect. This mortgage has no connection with

the mortgage indebtedness noted in the policy, nor had there been any subsequent agreement with defendant with respect thereto, nor had defendant any notice of its existence until after the loss. It remained of record in the office of the recorder of deeds at the time of the fire and plaintiff admitted that nothing had been paid on it at the time of the fire.

Plaintiff suggests, however, that it was given only as additional security for a debt of Mrs. Sprague's and that this debt had been paid. There is neither direct testimony nor testimony from which an inference can arise, to the effect that the Sprague indebtedness for the furniture had been paid *prior* to the date the automobile was destroyed by fire. In plaintiff's deposition which was taken almost eight months after the fire loss occurred and which was read in evidence, plaintiff testified that "she (Mrs. Sprague) has paid the furniture (loan) off and the mortgage is still on the car." But as to *when* she paid it off with respect to the fire, the record is silent. Referring again to plaintiff's deposition, the following questions and answers appear:

"Q. Both the loan to her and the loan to the Morris Plan Company were unpaid at the date of the loss? A. Yes, sir.

"Q. And are at the present time. A. Yes, sir."

Furthermore, the hereinafter described letter written by Mrs. Sprague's attorney to defendant company indicates that the mortgage indebtedness from the insured to her was an outstanding indebtedness which she was seeking to protect in event of payment by defendant to plaintiff of said loss under the insurance policy.

Plaintiff makes the further contention that even though it be held that the mortgage clause suspending liability during the existence of a mortgage not described in the policy, became operative, defendant cannot avail itself of this defense because it failed to return or tender to plaintiff the unearned premium within a reasonable time after discovery of this fact.

In support of this contention plaintiff cites the following cases: State ex rel. v. Trimble, 323 Mo. 458, 20 S. W. (2d) 46; Gold Issue Mining & Milling Co. v. Fire Ins. Co., 267 Mo. 524, 184 S. W. 999; Williams v. Connecticut Fire Ins. Co., 47 S. W. (2d) 207; Hayden v. American Cent. Ins. Co., 221 S. W. 437; Wolpers v. Globe & Rutgers Fire Ins. Co., 61 S. W. (2d) 224.

In each of these cases defendant relied upon an alleged violation of a provision in the policy which is clearly distinguishable from the mortgage clause provision hereinabove set out, of the policy under review in the instant case.

In State ex rel. v. Trimble, *supra,* the Supreme Court, on *certiorari,* had under review the opinion of the Kansas City Court of Appeals in the case of Luthy v. Northwestern Natl. Ins. Co., 20 S. W. (2d) 299. The policy there involved contained a provision that should the

household goods described in the policy be removed from the premises where they were then situated, without the written consent of the company, "the policy shall be *void*." The insured property was removed from the dwelling-house where it was situated when the insurance was written, to a public storage house and while there the storage house burned and the insured property was totally destroyed. The insurer refused to pay the loss and failed to return or tender the unearned premium. In the opinion in the Luthy case, this court held that the failure of the defendant after the fire to tender the unearned premium to plaintiff estopped defendant from claiming that the removal of property *voided* the policy. The Supreme Court in its opinion quashing its writ of *certiorari* said, l. c. 50:

"The conduct of relator in retaining the unearned and unused portion of the premium paid by the insured is clearly and utterly inconsistent with the insistence and contention of relator *that the policy of insurance is void and inoperative* from and after the time of the removal of the insured property, and therefore is not in force and effect *for the remaining and unexpired part of the policy term of three years.* The law does not permit a party to a contract to assert and insist that no risk or liability on his part is attached to the contract, because the contract has been rendered void and inoperative by some act or omission of the other opposite party to the contract, while the party thus denying liability under the contract at the same time holds onto, and retains, the consideration and benefits which he has received under the contract." (Italics ours.)

In the Williams case, *supra,* the policy provided that if the subject matter of the insurance be personal property and shall be encumbered, unless by agreement endorsed on the policy, then the policy shall be *void*. The insurance company defended on the ground that a chattel mortgage had been executed by the assured without any agreement thereto endorsed on said policy, because of which the policy was void. Plaintiff contended that defendant waived the right to avoid liability by retaining the premium after loss was sustained by plaintiff and the defendant was estopped from avoiding the policy on that ground. The court held:

"As a condition precedent to the availing itself of the defense of forfeiture in this case the company should have restored or offered to restore the unearned premium."

It then cites in support of this conclusion the language above quoted from the Supreme Court opinion in State ex rel. v. Trimble, *supra.*

Nowhere in either of these decisions is it suggested that the same rule would apply where there is no contention that the contract has become a nullity and where the contention is that the insurance was suspended during the existence of a condition specified in the policy, upon removal of which by assured the insurance would again attach.

Without discussing in detail the remaining three cases cited by plaintiff on this point, suffice it to say that in each of them the defense was that because of a violation of some provision of the policy, the policy was void—and not that liability thereunder was merely *suspended until the condition that brought about such suspension was removed,* whereupon the liability under the policy would reattach. In each of these last three cases it was held that the defense that the policy was void was not available without a showing by the defendant of a timely return or tender to the assured of the unearned premium, after knowledge of the fact on which such defense was based.

Unlike the provisions in the policies under consideration in the cases above referred to, the lien or encumbrance provision in the policy in the case at bar did not provide that the policy should be *void* in the event the property insured was or became subject to a lien or mortgage which was not described in the policy or consented to by the insurer. It merely provided that:

"This company shall not be liable for loss or damage to any property insured hereunder *while subject to any lien, mortgage or other incumbrance.*"

The defendant in its answer did not deny liability on the ground that the policy of insurance was void. It did not allege any violation of the mortgage clause. It pleaded a provision with respect to mortgages that were not specified in the insurance policy and not consented to by the company, and alleged that the property insured at the time of the loss was subject to the two mortgages described in the answer, neither of which was described in the policy. It alleged that the plaintiff had not removed the liens at the time of the fire loss and that under this provision of the policy, the loss did not come within the terms of the policy.

The policy contained this further provision, which is consistent with and lends support to defendant's position:

"In the event of loss or damage to the automobile described herein, whether such loss or damage is covered by this policy or not, the liability of this company shall be reduced by the amount of such loss or damage *until repairs have been completed, but shall then attach as originally written without additional premium.*"

It is defendant's position that the plaintiff had the right to place these mortgages on the car if he desired to do so and to pay them off later, and that the effect would merely be to exclude the loss under the terms of the policy if the loss occurred while the mortgages were unpaid.

From the last quoted provision of the policy, it is apparent that the policy takes into consideration the possibility that loss or damage to the automobile might occur under such circumstances that it would not be covered by the policy, in which event the liability of the company would continue but would "be reduced by the amount of such

loss or damage until repairs have been completed, but shall then attach as originally written without additional premium.'' It seems to us there is a clear distinction between the cases relied on by defendant, wherein the defense is that the policy has become void, and the instant case wherein it is contended that the loss occurred during a period in which conditions existed that effected a suspension of liability under the policy during their continuance—or, putting it another way, that under the condition then existing, the loss was not covered by the terms of the policy.

In the case of Travelers Ins. Co. v. Springfield Fire & Marine Ins. Co., 89 Fed. (2d) 757, the policy therein sued on contained an analogous provision for suspension of liability as follows:

''But it is expressly agreed that this Company shall not be liable for any loss or damage that may occur to the property herein mentioned while any promissory note or obligation, or part thereof, given for the premium remains past due and unpaid. When said premium note or obligation is paid this insurance shall again attach from the date of receipt of such payment by the Managers.''

The policy contained a clause providing that if the assured failed to pay any premium due on the policy the mortgagee shall pay it. A portion of the premium was paid in cash and an installment note was given for the balance of the premium covering a five-year term of insurance. The assured defaulted in the payment of an installment due on the note. The mortgagee was advised of this default, and he was also advised that if the company failed to receive remittance covering the delinquent installment within ten days ''the insurance will be suspended to the mortgagee.'' No payment of any installment on the premium note was made thereafter. The policy was not cancelled and insurer did not surrender the premium note. More than two years after default in premium payments, but within the term of the policy, the insured dwelling-house was destroyed by fire. The defense was that at the time of the fire, both assured and mortgagee were in default for non-payment of premium and hence the insurance at the time of the fire was inoperative. The plaintiff mortgagee admitted defaults but contended that the insurance contract was never cancelled and the insurer, *by retaining the premium note,* had waived default in the payment of premiums. The court held:

''The retention of the premium note by the insurer could not, under the circumstances of this case, constitute a waiver of the default of the mortgagee in the payment of premiums, for the reason that such retention was not inconsistent with the insurer's claim that the default of the mortgagee worked a suspension of the insurance. The insurer had a right to hold the note without accelerating its maturity, and to accord to the mortgagor and to the mortgagee an opportunity to revive the insurance by paying the premium installments which were in default.''

Under very similar facts, the St. Louis Court of Appeals has applied this same rule in the case of Barnes v. Continental Ins. Co., 30 Mo. App. 539. In the Barnes case the policy sued on was written for a five-year term commencing March 25, 1884. Part of the premium was paid in cash and an installment note was executed for the balance thereof. The policy recited the premium payable on an annual installment premium" basis. The policy provided that:

". . . this company shall not be liable for any loss or damage that may occur to the property herein mentioned, while any promissory note or obligation, or part thereof, given for the premium, remains past due and unpaid.

"The company may collect by suit or otherwise the premium note or notes, and receipt from the office of the company must be received by the assured before there can be a revival of the policy, which shall in no event carry the insurance beyond the original term."

The assured failed to pay the installment due under the terms of the note on March 1, 1885. The loss occurred March 13, 1885. Upon this showing the trial court sustained a demurrer to the evidence. In affirming the action of the trial court the appellate court held, l. c. 548:

"In this case, the policy provides that in the event of the non-payment of the 'annual installment,' i. e., part of the entire debt, it was optional with the company to declare all of the installments due; *and its liability for loss was simply suspended until payment was made according to the terms of the contract.*"

Applying the reasoning of these two cases to the facts in the instant case, we think it follows that the retention of the premium by the defendant here was not inconsistent with its claim that the existence of a mortgage not described in the policy and not consented to by the insurer, worked a suspension of the insurance. Following this reasoning it would seem that the insurer here likewise had a right to retain the premium and to accord to the insured an opportunity to revive defendant's liability under the policy by the discharge of the mortgage debt at any time within the term of the policy.

And if it be urged that after the fire there was nothing left to be insured (the testimony being the value of the automobile was reduced to mere junk value), the contract was nevertheless still in effect and there was no duty upon defendant to cancel the contract and return the premium. The policy provided that the policy might be cancelled at any time at the request of the insured upon surrender of the policy, whereupon he would be entitled to a return of the customary short rate premium for the unexpired portion of the term. The assured was free to act upon this provision if he saw fit, and only in this event would the company be obligated to return the short rate premium.

It seems to us that there is a clear distinction between those cases wherein the defense is that the policy is void and in the case at bar, wherein there is no contention that the policy is void, but only that liability has been suspended because of a condition set out in the policy upon the removal of which the liability of the company will reattach. If this distinction be sound, the reasoning which leads to the requirement of a return of the premium cannot logically apply to the instant case.

Entering these views, it follows that the court erred in refusing the peremptory instruction in the nature of a demurrer to the evidence.

In view of this ruling, it is unnecessary to consider other points raised in appellant's brief. The judgment is reversed. All concur.