EDDIE LAMBERT

*vs.*

NEW ENGLAND FIRE INSURANCE COMPANY

Kennebec. Opinion, June 24, 1952.

*McLean, Southard & Hunt,*
*John J. Everett,* for Plaintiff.

*Berman, Berman & Wernick,* for Defendant.

SITTING: MURCHIE, C. J., THAXTER, FELLOWS, MERRILL, NULTY, WILLIAMSON, JJ.

NULTY, J. This action comes before us on exceptions by the plaintiff to the order of a non-suit granted by the court at the October 1951 Term of the Kennebec County Superior Court. The action, by agreement, was tried before the court without a jury with right of exceptions reserved as to matters of law.

The claim is for loss or damage by fire to the plaintiff's truck under a policy of insurance issued by the predecessor companies of the defendant under what was termed a combination automobile policy which was a policy representing two insurance companies, which companies, according to the admission of the defendant's attorney, were consolidated into the New England Fire Insurance Company, the defendant in this action.

The plaintiff was the only witness and from his testimony and the documentary exhibits the following facts may be summarized: On April 11, 1949, plaintiff owned a 1944 GMC truck upon which, according to the evidence and to the declarations in the policy, there was no mortgage or other encumbrance. On that day he insured it against fire and other casualties through an authorized agency of the predecessors of the defendant company. Two days later, on April 13, 1949, plaintiff executed and delivered to Marcoux's Garage, Inc. an instrument admitted in evidence which, before lines were drawn through the signature, read as follows:

"1500.00                                    4/13 1949

1 year after date I promise to pay to the order of Marcoux's Garage, Inc. Fifteen Hundred .....
Dollars at 6% this note to cover 1944 GMC Army Truck    Motor 270242700    Serial 168901
Value Received

Eddie Lambert"

On the back of said instrument appears proper notation that it was duly recorded in the Town Clerk's Office, Brooks, Maine, on April 14, 1949, and, likewise on the back thereof is a notation "paid 5/7/51, W. F. Marcoux."

There is no evidence in the record which gives any indication that the defendant or any agent of the defendant was in any manner advised of the existence of said instrument for a considerable time after the loss which occurred on July 12, 1949, when, according to the evidence, the plaintiff, in endeavoring to avoid a collision with another automobile, pulled his truck off the road where it struck a tree, overturned and caught on fire and was practically a total loss. At the time of the fire said instrument was still in the possession of Marcoux's Garage, Inc. and the record shows that the plaintiff was indebted on July 12, 1949, to Marcoux's Garage, Inc. in the sum of $162. The plaintiff promptly notified the agent of the defendant and the next day they visited the scene of the accident and the exhibits duly admitted in evidence show that notice of loss by the plaintiff was sent to the defendant company on the day following the loss. From the record it appears that there was further delay in any adjustment of the loss due to the fact that the Office of the Insurance Commissioner of the State of Maine had indicated to the defendant agent that it was investigating the loss and directed that no adjustment be made until said office gave its consent. Time ran on and finally on January 17, 1951, the attorneys for the plaintiff took the matter up with the insurance agent of the defendant and learned that the Insurance Commissioner's Office was no longer interested in the matter. The exhibits show there was further correspondence not only with the agent of the defendant but directly with the defendant. These negotiations, however, were of no avail and the instant action was instituted.

From the record it is apparent that the court, in granting

the non-suit based its action upon Paragraph (h) of the exclusion provisions of the policy which reads as follows:

> "This policy does not apply; - - - - - (h) under coverages D, E, F, G, H, I, and J while the automobile is subject to any bailment lease, conditional sale, mortgage or other encumbrance not specifically declared and described in this policy;" (Under coverages in the policy, F includes fire.)

The plaintiff, while not admitting that said instrument hereinbefore set forth, executed and delivered on April 13, 1949, is an encumbrance, strenuously argues that Paragraph (h) under exclusions clearly applies only to encumbrances in existence at the time of issuance of the policy and that the words "specifically declared and described in this policy" can refer only to encumbrances in existence at the time of the issuance of the policy. In other words, the plaintiff's claim is that future encumbrances are not covered and that the plain meaning of the language in the exclusion clause is not susceptible of the meaning placed upon it by the defendant. The defendant, although setting up several other matters of defense in his brief statement filed in the pleadings, stated at the time of argument that it rested its case solely on exclusion clause (h) hereinbefore set forth.

The evidence discloses that the reason that plaintiff gave the instrument dated July 13, 1949, to Marcoux's Garage, Inc. was because he, plaintiff, was working for a man by the name of Lawler and contemplated terminating his employment. Plaintiff claimed he had information that his employer was going to attach his truck if he tried to terminate his employment and that he felt that if there was a mortgage on the truck it would prevent attachment of it by plaintiff's employer and that his employer would have to see Mr. Marcoux if it were attached. This explanation by plaintiff is the basis for a strenuous argument by the plain-

tiff that said instrument given by plaintiff to Marcoux's Garage, Inc. is not a mortgage or other encumbrance. Plaintiff asserts that said instrument is a note; that it does not convey title and that, therefore, it is not a mortgage. Plaintiff also asserts that it is not a Holmes note or a conditional sale because there never was any title to the truck in Marcoux's Garage, Inc. and that said instrument was without consideration and, as between the parties as a note, was absolutely void. Defendant asserts that said instrument is an equitable mortgage or, in any event, an encumbrance.

It is apparent from the summary of the facts that the main questions to be determined are whether or not said instrument dated April 13, 1949, given by plaintiff to Marcoux's Garage, Inc. was a valid encumbrance on the truck, and, if so, did exclusion clause (h) of the insurance policy suspend the operation of the policy and render the policy inapplicable and prevent the plaintiff from recovering his loss under the policy.

Neither party argues that said instrument is a bailment lease or a conditional sale. Is it, then, either a mortgage or other encumbrance? The word "mortgage" is a broad term and includes both legal and equitable mortgages. According to the text writers a chattel mortgage is defined as an instrument whereby the owner of personal property transfers the title to such property to another as security for the payment of money or the performance of some obligation or contract subject to be defeated on payment of the money or the performance of some obligation or contract. See 10 Am. Jur., Chattel Mortgages, Paragraph 2, Page 715.

We held in *Delaval Separator Company* v. *Jones et al.,* 117 Me. 95, 97, 98, 102 A. 968, that:

> "The mortgage" (chattel) "conveys title to the vendee which may be defeated by payment by the

vendor: * * * * * * *.  A mortgage is a sale, to the extent of carrying title, not an agreement to sell."

In the present case it is apparent from the evidence that there was no sale and that no title passed from the plaintiff to Marcoux's Garage, Inc., so said instrument cannot be called a chattel mortgage within the terms of the above definition or the cited decision.  The text writers define an equitable (chattel) mortgage to include every contract so convincingly established as to show a clear intention to give a lien on specified chattels of, and in the possession of the lienor, and the contract ought, in good conscience and equity, to be enforced according to that intention.  See 10 Am. Jur. Chattel Mortgages, Paragraph 3, Page 716.

With this definition in mind, we have examined some of the earlier decisions of our court and we find that *Oakes* v. *Moore*, 24 Me. 214, 220, decided in 1844, considered a question somewhat similar to the instant case.  The plaintiff had a contract to cut, drive and deliver certain pine lumber from land of the defendants, said contract being made with the agent of the defendants.  The contract contained a stipulation with respect to the terms of payment and also the words:

"said logs to be holden to said Oakes until all is paid, or satisfactory security given.".

The defendants claimed that the plaintiff by delivering the logs and losing possession of them—thereby lost or waived his lien.  Our court held that the plaintiff did not have a common law lien as that involved possession during its continuance but that there is a kind of lien arising under a special contract and that the words of the stipulation created

"what may be more properly termed, a mortgage, than a mere lien;"

and that under the terms of his contract plaintiff had the right to regain possession of the logs or their value.

In *Spaulding* v. *Adams,* 32 Me. 211, our court again affirmed the rule that a lien created by contract wherein possession is permitted to the general owner, is not discharged. In *Oliver* v. *Woodman,* 66 Me. 54, our court pointed out that common law liens did not extend to all classes of persons and that certain kinds of liens could only be acquired by special contract citing *Oakes* v. *Moore, supra.* In *Sawyer* v. *Gerrish,* 70 Me. 254, our court again considered an instrument in the form of a promissory note and not unlike said instrument in the instant case but containing words which the court held intended to give the defendant a claim on the foal stating:

> "The condition of the promise has been fulfilled and we think the promise should be."

and that the contract was in the nature of a mortgage and not distinguishable in principle from *Oakes* v. *Moore, supra.*

Applying the law cited above to said instrument in the instant case and construing the language contained therein and in the record in accordance with the applicable rules of law with respect to the construction of contracts, it is our opinion that the plaintiff intended to subject his truck to a claim or charge, in other words, to a special contract lien in the nature of a mortgage which might be termed an equitable mortgage under the definition cited herein but which in any event would be, if valid, an encumbrance.

We defined "encumbrance" in *Campbell* v. *Hamilton Mutual Insurance Company,* 51 Me. 69, 72 to be:

> "whatever is a lien upon an estate."

We likewise defined it (encumbrance) in *Newhall* v. *Union Mutual Fire Insurance Company,* 52 Me. 180, 181, as follows:

"An incumbrance is an embarrassment of an estate or property, so that it cannot be disposed of without being subject to it."

In any event, said instrument falls within the definition of encumbrance. The next question to determine is whether or not it was a valid, subsisting encumbrance or contract lien. The evidence discloses that the plaintiff, at the time of the making of the instrument, was indebted to Marcoux's Garage, Inc. in the sum of $162. In the face of this fact we cannot hold, as the plaintiff strenuously argues, that said instrument was without consideration and was a *nudum pactum*. We hold that said instrument created a valid, subsisting encumbrance or contract lien in the nature of a mortgage on the truck at least to the extent of $162, the amount admittedly due Marcoux's Garage, Inc. at the time of execution and delivery of said instrument.

We now pass to the question of whether the language in the exclusion clause becomes effective on a valid encumbrance made or placed upon the property subsequent to the date of the policy. The plaintiff insists that the exclusion clause does not in any manner refer to or include subsequent or future encumbrances. The defendant takes the opposite view and both argue their respective authorities. The plaintiff to a certain extent relies upon the Oregon case of *Medford* v. *Pacific National Fire Insurance Co.* 1950, 189 Or. 617, 219 P. (2nd) 142, rehearing denied, 222 P. (2nd) 407, 16 A. L. R. (2nd) 1181, 1197. It is true that the case, involving substantially the same exclusion language as found in the instant case, that is, the policy provided that it did not apply to damage by collision, fire or theft:

"While the automobile is subject to any - - mortgage - - not specifically declared and described in this policy"

was held by the court not to be applicable where the policy recited that there was an encumbrance upon the insured's

automobile and thereafter the insured paid off this encumbrance but a few days later borrowed some money from the third party giving the automobile as security, the court holding that in view of the phraseology of the policy there was no warranty or agreement against encumbrances created after the execution of the policy and that, therefore, the insurer was not relieved of his liability under a loss. The court said that the later encumbrance obviously could not be described in the policy and that the expression "this policy" was ambiguous and therefore should be construed favorably to the insured. We, however, do not subscribe to the reasoning of the Oregon Court and that reasoning is somewhat questioned in an annotation in 16 A. L. R. (2nd) 736, 752, Par. 8.

The defendant advances the view that the placing of an encumbrance after issuance of the policy is a violation of the provision against encumbrances under the contract of insurance. An examination of the authorities discloses that the language in which provisions against encumbrances are set forth shows very little variation or difference so far as the construction of the language is concerned. The words of exclusion contained in the policy in the instant case are similar to those clauses which are commonly used by insurance companies. The defendant argues that the meaning of the language of the exclusion clause contained in said policy should be construed in accordance with the ordinary meaning of the words contained therein in accordance with the ordinary rules of construction of contracts of this type which is the general rule. Defendant urges that the true construction of the exclusion clause is set forth in the case of *Zancker* v. *Northern Insurance Co.* (1943), 238 Mo. App. 110, 176 S. W. (2nd) 523. In that case the exclusion provision of the policy was

"This policy does not apply; (b) under any of the coverages *while* the automobile is subject to *any*

bailment lease, conditional sale, mortgage, or other encumbrance not specifically declared and described in this policy." (Underscoring ours.)

A comparison of this clause with that of the clause in the instant case and hereinbefore cited shows that there is no difference of importance between the two exclusion clauses. The *Zancker* case holds flatly that an encumbrance placed on an automobile after the issuance of the policy and in effect at the time of the damage to the automobile invalidates the policy. The court further goes on to state that the contention of the insured that the exclusion clause applied solely to encumbrances existing at the time of the issuance of the policy but not declared has no application; that it is not ambiguous and is not subject to any construction other than its plain meaning and that the word "while" as used in the policy is an adverbial modifier expressing duration meaning "as long as" and is not limited to the date of the issuance of the policy but referred as well to time thereafter. We might add that the word "any" in its ordinary meaning means "all or every" and we so interpret it. In the course of the *Zancker* opinion the court cited and quoted the case of *Bridgewater* v. *General Exchange Insurance Corporation* (1939), 234 Mo. App. 335, 131 S. W. (2nd) 220, with approval and stated that although the exclusion provision in the *Bridgewater* case is somewhat different in wording, the meaning and effect was the same and the ruling in said *Bridgewater* case was applicable in the *Zancker* case. There is an interesting case of *Globe & Rutgers Fire Insurance Co.* v. *Segler*, (Florida) 44 So. (2nd) 658, 16 A. L. R. (2nd) 731, decided February 21, 1950, wherein the court construed an exclusion clause which it said was unambiguous. The clause construed reads as follows:

"This policy does not apply - - - (b) under any of the coverages while the automobile is subject to any bailment lease, conditional sale, mortgage or

other incumbrance not specifically declared and described in this policy."

This exclusion clause is the same as that construed in the *Zancker* case and similar to the clause in the instant case. The facts are slightly different in that the policy was originally issued on an unencumbered automobile which was traded in for another car which subsequently became involved in a collision and the insurance policy was transferred by a change of car endorsement issued by the insurance agent as a result of a telephone conversation between the plaintiff and the agent in which conversation neither the agent inquired specifically about or the plaintiff made any statements as to an encumbrance on the replacement car which there was in fact. The court held that the insured was bound by the terms of the policy accepted and retained by him and that the provision against encumbrances was valid and applicable.

The authorities on the subject of validity and construction of provisions of automobile policies against encumbrances are collected and annotated at length in an annotation in 16 A. L. R. (2nd) 736 and we do not deem it necessary to further analyze the authorities. Inasmuch as we have concluded that the execution of said instrument dated April 13, 1949, by the plaintiff created a valid, subsisting encumbrance in the nature of a contract lien or equitable mortgage and have also concluded that the language of the exclusion clause is unambiguous and should be construed to apply to the instant case, it necessarily follows that the policy of fire insurance on the truck of the plaintiff became inapplicable while the encumbrance so created was in full force and effect. The plaintiff may not have intended the result which seems to us is inevitable under the evidence and the decisions cited herein, but exclusion clauses, when fair and reasonable, as this one appears to be, are a part of the contract between the insured and the insurance com-

pany and are binding. It therefore follows that the exception to the granting of a non-suit must be overruled. The mandate will be

*Exceptions overruled.*