NATIONAL COUNCIL ON COMPENSA-
TION INSURANCE

v.

SUPERINTENDENT OF INSURANCE,
et al.

Supreme Judicial Court of Maine.

Argued May 4, 1984.

Decided Sept. 6, 1984.

Preti, Flaherty & Beliveau, Harold C. Pachios (orally), Portland, for plaintiff.

Linda M. Pistner, Asst. Atty. Gen. (orally), Augusta, for Superintendent of Insurance.

Pierce, Atwood, Scribner, Allen, Smith & Lancaster, Donald W. Perkins (orally), Portland, for intervenor employers.

McTeague, Higbee, Libner, Reitman & Priest, Thomas R. Watson (orally), Patrick N. McTeague, Brunswick, for intervenor AFL–CIO.

Before NICHOLS, ROBERTS, WATHEN, GLASSMAN and SCOLNIK, JJ., and DUFRESNE, A.R.J.

SCOLNIK, Justice.

On December 6, 1982, the National Council on Compensation Insurance (NCCI) filed an application with the Superintendent of the Bureau of Insurance (Superintendent) pursuant to 39 M.R.S.A. § 22 (Supp.1983)[1] seeking an increase in workers' compensation insurance rates. NCCI filed the application on behalf of its subscriber members in its capacity as a rating organization licensed under 24-A M.R.S.A. § 2310 (1974 & Supp.1983). All insurers that underwrite workers' compensation insurance in Maine are members of NCCI.

Although the application attempted to justify an average rate increase of 110.1%, NCCI limited its formal rate request at the public hearing to a 27.5% average increase in the statewide level of workers' compensation insurance premiums with various proposed increases for particular industry groups based on past claims experience. No separate analysis was presented to support the proposed 27.5% increase. Instead, NCCI relied generally on the data and methodology provided in the application to support the 110.1% figure.

Public hearings were held on February 1 and 2, 1983. Also participating as intervenors were several Maine employers and the Maine AFL-CIO. After the public hearing, the Superintendent issued his decision denying the requested rate increase. Among his eighteen findings of fact were findings that NCCI failed to satisfy the burden of proof requirements of subsections 22(3)(B)(1) and 22(3)(B)(2) which provide as follows:

Any rating organization or insurer presenting a workers' compensation rate

---

**1.** *Repealed and replaced* by P.L.1983, c. 509, §§ 1, 2. Section 22 was also amended by P.L. 1983, c. 551, §§ 3, 4 without reference to the earlier repeal by P.L.1983, c. 509, § 1.

**2.** Section 22 sets forth the statutory criteria for approval of workers' compensation insurance rates. The cross-reference to chapters 23 and 25

---

filing shall have the burden of proving, by sworn testimony, that the proposed rates are correct and proper and that they meet the requirements of Title 24-A, chapters 23 and 25.[2]

. . . . .

B. The rating organization or insurer shall also establish:

(1) That any profit factor used in the filing will produce only a just and reasonable return on the investment allocable to the coverage of risks in this State;

and:

(2) That the loss reserves, including the discount rates applied to those reserves, are reasonable.

No workers' compensation rate filing shall be approved in the absence of evidence that the information or data relied upon is accurate.

39 M.R.S.A. § 22(3) (Supp.1983). The Superintendent also concluded that because these two sections were not satisfied, NCCI failed to establish that the proposed rates were correct and proper and that they met the requirements of Title 24-A, Chapters 23 and 25.

NCCI filed a timely petition for review of the order with the Superior Court (Kennebec County) pursuant to 5 M.R.S.A. § 11001 (1979 & Supp.1983) and 24-A M.R.S.A. § 236 (Supp.1983). The Superior Court affirmed the decision of the Superintendent. NCCI thereafter brought this further appeal. Finding no reversible error, we affirm the judgment.

I.

■ We first consider NCCI's contention that the Superintendent erred in holding that NCCI failed to establish "that any

---

of Title 24-A incorporates the provisions of the Insurance Code governing insurance rates in general. These chapters apply to workers' compensation insurance rate requests to the extent they are not inconsistent with section 22. 24-A M.R.S.A. § 2302(3) (1974).

profit factor used in the filing will produce only a just and reasonable return on the investment allocable to the coverage of risks." NCCI first argues that the Superintendent erroneously interpreted and applied section 22(3)(B)(1). As an alternative argument, it asserts that the Superintendent's finding is unsupported by substantial evidence. We reject both arguments. Section 22(3)(B)(1) requires a rate applicant to establish "[t]hat any profit factor used in the filing will produce only a just and reasonable return on the investment allocable to the coverage of risks in this State." The Superintendent found the proof under this section deficient because of NCCI's failure to project a level of investment income resulting from the proposed 27.5% rate increase. The Superintendent found that without such a projection NCCI could not establish that the return on the coverage risks would be "just and reasonable."

NCCI concedes that it did not present a projection of investment income that would result under the proposed rates. It argues, however, that section 22(3)(B)(1) is inapplicable to this case because the 27.5% rate request did not include an underwriting profit factor.

We agree with the interpretation given the statute by the Superintendent. Although NCCI finally requested only a 27.5% rate increase, it contended that the data supported a 110% rate increase. The 110.1% increase included a 2.5% profit factor or underwriting margin, i.e., the rate of return resulting solely from the underwriting of workers' compensation insurance without any consideration given to the additional income derived from the investment of unearned premium reserves and loss reserves. The requested 27.5% rate increase did not include any identified underwriting profit factor. The fact that "no" underwriting profit factor was calculated into the rate request does not, however, dispense with the requirements of section 22(3)(B)(1).

 A well recognized rule of statutory construction provides that the plain meaning of the language of a statute generally controls its interpretation, *Franklin Property Trust v. Foresite, Inc.*, 438 A.2d 218, 222 (Me.1981); *Concord General Mutual Insurance Co. v. Patrons-Oxford Mutual Insurance Co.*, 411 A.2d 1017, 1020 (Me.1980). NCCI's argument ignores the definition of the adjective "any" modifying "profit factor." Its ordinary meaning is "all or every." *Lambert v. New England Fire Insurance Co.*, 148 Me. 60, 70, 90 A.2d 451, 455 (1952); *see also Bale v. Ryder*, 290 A.2d 359, 360 (Me.1972) (common meaning of adjective "any" is "no matter which one.")[3] Thus, the ordinary and common meaning of "any profit factor" is "all or every profit factor" whether it be positive, zero or negative in value. As so defined, section 22(3)(B)(1) is applicable to every rate request and is not limited to only those where profit is realized on the underwriting of insurance without consideration of investment income.

 We have previously noted that legislation will be construed to avoid, if possible, an unreasonable result, *Schwanda v. Bonney*, 418 A.2d 163, 166 (Me.1980); *Woodcock v. Atlass*, 393 A.2d 167, 170 (Me. 1978). The construction of section 22(3)(B)(1) urged by NCCI results in the application of the section only in situations where the underwriting profit factor has a positive valuation. Such an approach ignores the purpose and plain meaning of the section and strips the Superintendent of any effective ratemaking authority. The import of section 22(3)(B)(1) is its requirement that the applicant establish that the return on its investment is "just and reasonable." The relevance of investment income to this matter cannot be questioned. *Cf. Casco Bay Lines v. Public Utilities Commission*, 390 A.2d 483, 491 (Me.1978)

**3.** Webster's Third New International Dictionary 97 (1971) defines "any" in pertinent part as: *"one, no matter what one: Every."*

(interest income properly considered in the setting of utility rates). It is not beyond the realm of possibility that insurers which experience no underwriting profit, i.e., have a zero or negative underwriting profit factor, could enjoy a "just and reasonable" return on their investment solely as a result of income earned from the investment of unearned premium reserves and loss reserves. As aptly stated by the Massachusetts Supreme Judicial Court, "The financial facts of life—not unrecognized in the industry—are that money is made on investments, not on underwriting." *Massachusetts Automobile Rating and Accident Prevention Bureau v. Commissioner of Insurance*, 384 Mass. 333, ——, 424 N.E.2d 1127, 1135 (1981) (quoting *Massachusetts Automobile Rating and Accident Prevention Bureau v. Commissioner of Insurance*, 381 Mass. 592, 603–606, 411 N.E.2d 762, 769–770 (1980)). Recognizing that reality, we conclude that the Legislature did not intend the illogical and unreasonable result that a rate applicant which experiences no underwriting profit need not establish that his rate of return is "just and reasonable." Further, the Superintendent's interpretation of the statute is entitled to great deference; *see Kelley v. Halperin*, 390 A.2d 1078, 1080 (Me.1978); *In re O'Donnell's Express*, 260 A.2d 539, 544 (Me.1970), and we cannot say that his interpretation, which comports with both the statute's plain meaning and its legislative purpose, is incorrect.

■ Nor can we say that the Superintendent's conclusion that NCCI failed to sustain its burden of proof imposed by section 22(3)(B)(1) was unsupported by the record. NCCI's conclusion that it met its burden is premised on the untested assumptions that a 110.1% rate increase is necessary for the insurers to earn a "just and reasonable" return on the investment and that losses will be experienced under the proposed 27.5% rate hike. Absent proof of future investment income, however, it is impossible to determine at which

point a "just and reasonable" return is earned. The Superintendent's finding, therefore, is adequately supported by the record. *See Gulick v. Board of Environmental Protection* 452 A.2d 1202, 1208 (Me.1982); *Seven Islands Land Co. v. Maine Land Use Regulation Commission*, 450 A.2d 475, 479 (Me.1982).

II.

■ NCCI next asserts that the Superintendent erred in holding that NCCI failed to establish, as required by section 22(3)(B)(2), "[t]hat the loss reserves,[4] including the discount rates applied to those reserves, are reasonable." We find the Superintendent's decision ambiguous as to the basis for the above holding. However, we need not reach the merits of this issue. Because section 22 places upon a workers' compensation rate applicant the burden of proof as to each of the enumerated criteria, the failure to satisfy one subsection is a sufficient basis for denial of the application. NCCI did not comport with the requirements of section 22(3)(B)(1) and we need not address the question whether the Superintendent's conclusion regarding section 22(3)(B)(2) is supported by the record.

III.

NCCI also raises the issue of estoppel. It asserts that the evidence submitted satisfies the requirements of sections 22(3)(B)(1) and (2) as those sections were interpreted by the Superintendent in an earlier decision. It further argues that it was entitled to rely on those interpretations and that the Superintendent is estopped in the present case from finding sections 22(3)(B)(1) and (2) unsatisfied. The absence of an adequate record forecloses our review of this issue.

■ It is well established that the appellant has the duty of furnishing an adequate record upon which fair consideration can be given by the appellate court to the issues raised on appeal. *State v. Mar-*

---

4. Loss reserves are the insurer's estimate of the amount of its liability for claims on its policies.

*shall,* 451 A.2d 633, 635 (Me.1982); *Your Home, Inc. v. City of Portland,* 432 A.2d 1250, 1254 (Me.1981); *Meyer v. Meyer,* 414 A.2d 236, 238 (Me.1980). The record in the present case does not contain the decision upon which NCCI allegedly relied. Although NCCI has included in its brief alleged portions of the Superintendent's decision in the earlier rate filing, such *sua sponte* supplementation of the record on appeal is not permitted and must be disregarded. *J.F. Singleton Co. v. Rush,* 463 A.2d 282, 283 n. 2 (Me.1983); *State v. Siegfried,* 460 A.2d 1382, 1383 (Me.1983); *State v. Earley,* 454 A.2d 341, 344 n. 8 (Me.1983). Because we are not presented with a sufficient record for appellate review purposes, we do not consider the issue of estoppel.

## IV.

■■■ NCCI next urges that if the evidence did not support its request for a 27.5% rate increase, the Superintendent should have determined whether a lesser rate increase was justified. Both the Superintendent and the intervenors counter that there can be no middle ground. The filing must be either approved or disapproved. We agree with the Superintendent and the intervenors.

Section 22 is structured around the concept of approval or disapproval of a filing. The all or nothing nature of the process is particularly evident in the language of section 22(6) which provides as follows:

The superintendent shall hold a public hearing, as provided in Title 24–A, sections 229 to 235, on each filing of rates for workers' compensation insurance. The public hearing shall be conducted within 60 days of the receipt of the rate filing by the Bureau of Insurance. The superintendent shall *approve or disapprove* such filing and state his findings in a written order issued within 90 days from the receipt of such filing by the Bureau of Insurance. If the superintendent *denies* a filing, a further filing shall be deemed to be a new filing sub-

ject to this public heading [sic] requirement.

39 M.R.S.A. § 22(6) (Supp.1983) (emphasis added), *repealed and replaced by* P.L. 1983, c. 509, § 1, 2. The purpose of this new filing requirement is explained in its legislative history as follows:

Subsection 6 requires the superintendent to hold a public hearing on each filing or refiling. This will prohibit the current practice under which the superintendent, after a public hearing and disapproval of a filing, later approves a lesser increase, at a point in time substantially after the filing in question, without the opportunity for cross-examination and public participation provided by a public hearing.

Statement of Fact, Comm. Amend. A to L.D. 760, No. H–254 (109th Legis., 1979). Section 22 clearly limits the Superintendent's power to approving or disapproving *in toto* the requested rate increase. Having found that NCCI did not meet its burden of proof as to the requested 27.5% rate increase, the Superintendent properly disapproved the filing.

## V.

■■ We also reject the final argument advanced by NCCI, namely, that the failure to award rate relief deprives its members of property without compensation in violation of art. I, § 6–A of the Maine Constitution and amendments V and XIV of the United States Constitution. In order to establish an unconstitutional confiscation, NCCI must prove that its members are without the opportunity to realize a reasonable return on their investment in Maine and that the inadequate return results directly from the rate approval process and not from other causes. *Massachusetts Automobile Rating and Accident Prevention Bureau v. Commissioner of Insurance,* 384 Mass. at —, 424 N.E.2d at 1135. NCCI does not allege that the statutory criteria are impossible to satisfy nor does it offer any explanation for its failure to project investment income. When viewed in this light, the constitutional argument must fail since there can be no showing of

an inadequate rate of return absent proof of investment income. The Superintendent's disapproval of the filing in part for the failure to satisfy section 22(3)(B)(1) does not in and of itself amount to an unconstitutional taking of property.

The entry is:

Judgment affirmed.

All concurring.