Coleman v. Cole.

———

COLEMAN et al., Appellants, v. COLE et al.; WHITE, Assignee AURORA STATE BANK, Interpleader.

Division One, November 12, 1900.

1. **Appeals:** JURISDICTION: CONSTITUTIONALITY OF LAW. Until the trial court has finally passed upon the constitutionality of an act, the Supreme Court does not have jurisdiction of the appeal. And where a bank by its answer pleads a general denial and three separate special defenses, among them that an act in reference to usury is unconstitutional, and a motion to strike out the three special defenses is sustained, and after judgment against defendant the court grants him a new trial on the ground that it had erred in sustaining the motion to strike out, it will not be held that it passed upon the constitutionality of such usury act.

2. ———: ———: ———: NEW TRIAL. The granting of a new trial by the trial court on the ground that it had erred in striking out certain special defenses contained in the answer, among them a plea that a certain act of the legislature was unconstitutional, is not adjudging the act unconstitutional, but only saying that the question shall be one of those to be decided when the case is tried again.

3. **Usury:** WHAT IS. If the transaction is a loan and the money charged or exacted for the use of the money loaned exceeds the legal rate of interest, it is usury, no matter what words it may be clothed in or how it may be disguised. But if the transaction is a purchase of a previously executed and uttered note, or other evidence of debt, such charge is as legal as any purchase of any other merchantable article.

4. ———: EFFECT OF. The taint of usury does not wipe out or destroy the debt, but by the act of 1891 (which has been declared by this court to be constitutional) it destroys the lien or mortgage given to secure the debt.

5. ———: WHO MAY INTERPOSE DEFENSE. The plea of usury is a privilege personal to the debtor or his privies in blood, contract or representation, and an attaching creditor of the mortgagor · is a privy in representation with the mortgagor, and hence can interpose the defense of a usurious note to a claim by the mortgagee of the mortgaged property by him attached.

Appeal from Lawrence Circuit Court.—*Hon. J. C. Lamson,* Judge.

TRANSFERRED TO ST. LOUIS COURT OF APPEALS.

*Cloud & Davis* and *H. H. Bloss* for appellants.

*Edward J. White* for respondent.

MARSHALL, J.—This cause was certified to this court by the St. Louis Court of Appeals on the ground that it "involves the construction of the Constitution of the State of Missouri." The controversy is this: On the twenty-fourth of October, 1892, R. L. McElhaney and N. L. Wickmire, who were respectively the president and secretary of the Davie Mining & Development Company, executed and delivered to the Aurora State Bank, their promissory note for one thousand dollars, payable one hundred and twenty days after date, with interest from maturity at eight per cent per annum. The bank exacted forty dollars, usury, as the plaintiffs contend, or discount, as the respondents contend, and placed the nine hundred and sixty dollars balance, to the credit of the Davie Mining & Development Company, and that company afterwards drew that balance from the bank. When this note fell due on the 23d of February, 1893, McElhaney and Wickmire, as such president and secretary,

executed a new note to McElhaney as payee, for one thousand dollars, payable ninety days after date, with eight per cent interest from maturity, and McElhaney, Wickmire and the defendant Cole, as individuals, signed the following contract, which was indorsed on the back of the note, viz: "Waiving protest, demand, notice and notice of non-payment, for value received, we hereby assign, transfer and indorse the within note to Aurora State Bank and guarantee full payment of the same." This note was delivered to the bank, thirty dollars was exacted by the bank, and the balance of nine hundred and seventy dollars was passed to the credit of the Davie Mining & Development Company, and used to retire the first note above referred to. On the thirty-first of March, 1893, McElhaney and Wickmire as president and secretary and the "Davie M. & D. Co.," executed to McElhaney a note for three hundred and fifty dollars, payable sixty days after date, with eight per cent interest from maturity, and McElhaney, Wickmire and defendant Cole, signed a contract written on the back thereof which was in the same words as those above quoted from the back of the one thousand dollar note. This note was also negotiated to the bank and the bank exacted seven dollars thereon and the balance of three hundred and forty-three dollars was placed to the credit of the Davie Mining and Development Company and was thereafter drawn out of the bank by the mining company. On the twenty-sixth of May, 1893, the defendants Cole and Wickmire executed to the bank their note for thirteen hundred and fifty dollars, payable thirty days after date, with eight per cent interest from date, and deposited as collateral security therefor the one thousand dollar note aforesaid, dated February 23, 1893 and the three hundred and fifty dollar note aforesaid, and also a chattel mortgage "on the Davie M. & D. Co.'s plant," but which is nowhere set out or described in this record. On the twenty-seventh of May, 1893, the defendant Cole executed to the bank a chattel

mortgage covering the personal property in controversy here, to secure the note for thirteen hundred and fifty dollars made by him and Wickmire to the bank the day before. The notes were not paid and the bank took possession of the property by virtue of the terms of the mortgage. Thereupon the plaintiffs herein, who were general creditors of Cole, instituted a suit against him on an open account to recover their debt, amounting to $601.34, and afterwards sued out an attachment in aid thereof, and had the writ levied on the property in controversy here. The bank interpleaded and claimed the property by virtue of its mortgage. The plaintiffs pleaded that the mortgage was fraudulent as to them for the reason that the debt secured by the mortgage was tainted with usury. The case was tried and resulted in a verdict for the interpleader; the plaintiffs appealed to the St. Louis Court of Appeals, where the judgment was reversed and the cause remanded, that court sustaining the plaintiffs' contention that the mortgage was void because the debt it secured was usurious. [Coleman v. White, 69 Mo. App. 530.] When the cause again reached the circuit court the interpleader filed an amended reply to the plaintiffs' plea of usury, which was, first, a general denial; second, that the Cole note (that dated May 26, 1893) was taken as a payment of the McElhaney and Wickmire notes for $1,000, dated February 23, 1893, and of the McElhaney, Wickmire and Cole note for $350, dated March 31, 1893, and that Cole was only a guarantor on the $350 note, and, therefore, Cole could not plead usury as to either of those notes, and that no interest, usury or other payment had ever been paid on the $1,350 note made by Cole on May 26, 1893, and hence the plaintiffs as attaching creditors of Cole could not plead such usury for want of privity between them and Cole and for want of privity between Cole and the parties who paid the usury; third, that the parties who paid the usury had waived the defense of usury; and, fourth, that the act of April 21,

1891 (Laws 1891, p. 171), relating to usury and chattel mortgages was unconstitutional, because in conflict with sections 28 and 53 of article 4 of the Constitution of Missouri. Upon motion of the plaintiffs the court struck out all of the amended reply except the general denial, and the interpleader properly saved exceptions to the ruling. . The case was tried on the issues remaining.   At the instance of the plaintiffs the court instructed the jury that if the bank exacted or received interest at a rate exceeding eight per cent per annum on the $1,000 or the $350 notes, and if the Cole note and mortgage were received in lieu or settlement of those notes their verdict should be for the plaintiffs, and the court refused to instruct the jury, as the interpleader requested, that the taint of usury as to the $1,000 and $350 notes did not vitiate the Cole note and mortgage if it was given and accepted in full payment and discharge of the usury-tainted notes; that usury could only be interposed as a defense by the principal debtor or those in privity with him by blood, contract or representation and that in this case Cole did not stand in privity with the makers of the original notes and hence neither he nor his attaching creditors, the plaintiffs, could interpose that defense to the mortgage.   The jury found for the plaintiffs, and in due time the interpleader filed a motion for a new trial.   The court sustained the motion for a new trial, stating the reasons for so doing to be: "It appearing to the court that on the trial of the interplea the jury were instructed by the court as to what their finding from the evidence should be, and that the court failed to submit all the issues to the jury.   And that the interpleader under the evidence should have been permitted to amend its reply before proceeding to trial and the same was improperly stricken out by the court, and the plaintiff at the trial was permitted to introduce improper and illegal evidence, and that the interpleader was prevented from intro-

ducing legal evidence in the cause, and that an improper finding and verdict was occasioned by such matters, and that the interpleader has a just cause of action, and has discovered new and material evidence since the trial likely to change the result in a new trial."

Thereupon the plaintiffs appealed to the St. Louis Court of Appeals under the provisions of section 2246, Revised Statutes 1889, as amended by the act of 1891 (Laws 1891, p. 70) and by the act of 1895 (Laws 1895, p. 91). On motion of the interpleader the court of appeals transferred the case to this court for the reasons first above stated.

I.

The circuit court has never declared the act of 1891, relating to the effect of usury upon a mortgage, to be unconstitutional. It struck out the interpleader's reply, which so claimed, and tried the case upon the theory that the act was valid. But it is claimed that in granting the interpleader a new trial the court declared that it had erred in striking out the reply. The reply contained four defenses. The court struck out the second, third and fourth, which were special defenses and only the fourth related to the constitutionality of that act, while the motion to strike out was directed against all three special defenses. The court may have been of opinion when it granted a new trial that the other two special defenses were well taken and that the last defense, as to the constitutionality of the act of 1891, was untenable, and that as the motion to strike out embraced all three it was improperly stricken out when the reply was treated as a whole. If this was what was intended by the court then it can not be said that the trial court has yet finally passed upon the question of the constitutionality of that act and held it to be unconstitutional, and until it does so the plaintiffs can not be heard to complain.

[Parlin & Orendorf Co. v. Hord, 145 Mo. l. c. 119; Ash v.

Independence, 145 Mo. 1. c. 126.]    On the other hand if the granting of a new trial be conceded to imply that the trial court believed it had erred in striking out the fourth special defense, which set up the question of the constitutionality of the act, it still remains a fact that the trial court has never yet declared that act to be unconstitutional.    The only thing yet done that looks in that direction is in effect holding that question to be one of the questions to be decided when the case is tried anew, and it has not yet even set aside its order striking out the reply and has not yet restored that portion of the reply.    It is only proper to believe that the trial court will never declare that act to be unconstitutional, for that question has been set at rest by the decisions of this court in Kreibohm v. Yancey, 154 Mo. 1. c. 85, and Adler Clothing Co. v. Corl, 155 Mo. 149.    Until the trial court acts finally on this question it can not be said that a right guaranteed by the Constitution has been claimed and denied to the appellant in that court, and until this happens this court, having no jurisdiction of this case for any other reason, can not be held to have jurisdiction on this ground.

## II.

The circuit court was asked to grant a new trial for nine different reasons.    It assigned five different reasons for so doing, to-wit:    First, that the court instructed the jury as to what their finding from the evidence should be; second, that the court failed to submit all the issues to the jury; third, that the court erred in striking out all of the reply except the general denial; fourth, that the plaintiff was permitted to introduce improper and illegal evidence; and fifth, that the interpleader was prevented from introducing legal evidence. The motion for a new trial also set up as grounds for a new trial that (3) the verdict was against the evidence and the weight of the evidence, and (9) newly discovered evidence.

If the court granted the new trial for any of the five reasons stated by it, except the third, or for either of the two other reasons specified in the motion therefor, it would not be contended that this court had jurisdiction in this case to review its action, nor if it had jurisdiction that it would set aside its action in this case. The extent to which this court will go on appeals of this character and the power of the trial court to grant new trials was recently decided by this court in Haven v. Railroad, 155 Mo. 216, and this case does not fall within the rule there announced under which this court will set aside the action of a trial court in granting a new trial.

In the light of the rules declared in State ex rel. Attorney General v. Boatman's Savings Institution, 48 Mo. 189, and Kreibohm v. Yancey, 154 Mo. l. c. 895, there ought to be no difficulty in determining whether a transaction is usurious or legal. If the transaction is a loan and the sum charged or exacted for the use of the money loaned exceeds the legal rate of interest, it is usury no matter what words it may be clothed in. But if the transaction is a simple purchase of a previously executed and uttered evidence of debt it is as legal as any purchase of any other merchantable article. The taint of usury does not wipe out or destroy the debt, but under the Act of 1891 it destroys the lien or mortgage given to secure the debt. [Adler Clothing Co. v. Corl. 155 Mo. 149.] The plea of usury is a privilege personal to the debtor or his privies in blood, contract or representation, and an attaching creditor of the mortgagor is a privy in representation with the mortgagor and hence can interpose the defense. [American Rubber Co. v. Wilson, 55 Mo. App. 656.] There is nothing in Hill v. Taylor, 125 Mo. 331, which holds a contrary doctrine, for it was there expressly decided that there was no question of interest or usury in that case, and that the case was simply one of fraudulent disposition of property with intent to hinder,

delay or defraud the creditors of the grantor, and in Adler Clothing Co. v. Corl, *supra*, it was held that the giving of a mortgage securing a debt that was tainted with usury was not a fraudulent disposition of property and attachment would not lie because of the giving thereof. It follows logically that if the right to interpose this defense is open to the privies of the debtor, such right can not be taken away from them by any subsequent act of the debtor without their consent. In this case the question of the character and extent of the obligation of Cole, who wrote his name on the back of the two notes for which the note secured by the mortgage in question here was given, was a mixed question of law and fact. [Kingman & Co. v. Buggy Co., 150 Mo. l. c. 301 and 302.]

In short any or all of these questions might have influenced the trial court to grant a new trial in this case, and yet this court has no jurisdiction to review its decision, for concededly, we have jurisdiction only if the constitutionality of the Act of 1891 has been decided adversely to the plaintiffs, and as above pointed out no such decision has ever yet been rendered by the trial court, and upon a trial anew the trial court will not so hold. The power to review the other alleged errors in granting a new trial is vested in this case in the St. Louis Court of Appeals, and the cause is, therefore, transferred to that court.

All concur.