SAMUEL J. T. STRAUS, Trustee, and WILLIAM R. ORTHWEIN, Cotrustee, v. JULIUS E. TRIBOUT ET AL., Defendants, CHASE HOTEL COMPANY, Appellant.—116 S. W. (2d) 106.

Division Two, May 3, 1938.*

*Bishop & Claiborne* and *Paul Dillon* for appellant.

---

*NOTE: Opinion filed at September Term, 1937, December 17, 1937; motion for rehearing filed; motion overruled at May Term, 1938, May 3, 1938.

512

*Theodore Rassieur, David Levinson* and *Sullivan, Reeder & Finley* for respondents.

WESTHUES, C.—Respondents, plaintiffs below, brought this suit to foreclose a certain deed of trust on real estate and a chattel mortgage on personal property. The property covered by the instruments was the Chase Hotel in the city of St. Louis, Missouri. The trial court entered a decree for plaintiffs and the appellant, hotel company, appealed. The defense set up was usury. The appellant

abandoned its defense as against the deed of trust. The only controversy remaining in the case is over the chattel mortgage. Julius E. Tribout and wife executed the note and chattel mortgage in the first instance and therefore were made defendants. However, they had no interest in the case, since they were merely straw parties, and therefore did not appeal. The appellant, Chase Hotel Company, a corporation, had title to the property at the time foreclosure proceedings were instituted.

The main facts, necessary for an understanding of the question, upon which we have determined the case are as follows: Chase Ulman owned real estate in St. Louis, situated in the northeast corner of Kingshighway and Lindell Boulevard. About the year 1920, he conceived the idea of constructing a large hotel upon this property. For reasons of his own, in which we are not now concerned, he transferred the title to this property to one of his employees, J. E. Tribout, and wife Agnes C. Tribout. Application was then made to S. W. Straus & Company, a partnership, with offices in St. Louis, to procure funds for the purpose of constructing a hotel. The Tribouts executed a temporary note and bond for $2,700,000, dated October 1, 1921, bearing interest at seven per cent annually. This note and bond were later returned to the Tribouts and a series of bonds totaling $2,700,000, due at various dates, bearing interest at seven per cent per annum, were executed by the Tribouts, and a deed of trust and chattel mortgage were given to secure the bonds. The construction of the hotel was completed in the year 1923. As the construction of the hotel progressed Straus & Company advanced the cash to pay for the labor and materials. After its completion it was operated by various parties who paid the interest and the principal on the bonds which fell due during that time, amounting to $745,000. A default occurred in the year 1931, in both the payment of interest and bonds then due. Appellant, Chase Hotel Company, turned the property over to the trustees for the bondholders, who are the respondents in this case. Later this suit was brought to foreclose, and then, for the first time, the question of usury was mentioned when the company filed its answer to the foreclosure proceedings. The defendant claimed that the chattel mortgage was given to secure a debt tainted with usury, and therefore was void by reason of our statute, Section 2844, Revised Statutes 1929 (7 Mo. Stat. Ann., p. 4633).

The bonds, upon their face, did not disclose usury, but the defendant claimed usury was exacted. This claim is based upon the contract entered into between Straus & Company and the Tribouts, which reads as follows:

" 'X. The Purchaser agrees to purchase and the Seller agrees to sell and deliver to the Purchaser said bond issue for a sum equal

to ninety per cent (90%) of the par value thereof, the proceeds of said sale (to-wit, ninety per cent (90%) of the par value thereof) to be held, applied and disposed of in the manner and under the conditions provided for in Article XII hereinafter set forth.'"

Appellant in its brief interprets the contract as follows:

"S. W. Straus & Company, a partnership, agreed to buy the bonds of Tribout and his wife for ninety cents on the dollar. In other words, they were to be given $2,700,000 worth of bonds and they were to give the Tribouts, for said bonds, $2,430,000. In other words, they were to loan the Tribouts $2,430,000, and the Tribouts were to return them $2,700,000 with interest at the rate of 7 per cent, and the interest on this $2,700,000 began to be earned from the date of the bond, to-wit, October 1, 1921. . . . "

It was also contended, by appellant, that the Tribouts were charged interest on the full amount of $2,700,000, from October 1, 1921, when in fact the money was paid to the Tribouts, as the work progressed, over a period of nearly two years. S. W. Straus & Company of St. Louis was connected with an extensive organization and was engaged in the business of selling bonds to the investing public. The evidence disclosed that there was a corporation in Chicago known as S. W. Straus & Company, and a like corporation in New York; also numerous branch offices in various parts of the United States. In other words, Straus & Company had an efficient organization ready to make contact with people who had money to invest. Respondents contend that the contract between Straus & Company and the Tribouts was not a loan but an underwriting contract; that it was understood between the parties that the bonds were to be sold to the investing public immediately, through the Straus organization. It was admitted by the defendants that the Tribouts and all parties interested in the transaction at the time, knew that the bonds, with interest coupons attached, were to be sold, and were sold to the investing public by Straus & Company to whom the bonds were delivered for that purpose. The bonds were sold at par and accrued interest. Respondents also contend that the plea of usury cannot avail the defendants because the property was sold by the Tribouts subject to the deed of trust and chattel mortgage; that the total indebtedness on the property, as evidenced by the balance due on the bonds, was considered as a part of the purchase price, thereby wiping out the defense of usury, if, in fact, it ever existed. A number of transfers of the property were made, subject to the indebtedness, as evidenced by bonds. The property was deeded to appellant subject to the chattel mortgage and deed of trust. For the purpose of this case a recitation of one transfer will be sufficient. On December 15, 1924, a deed and bill of sale were executed by the then owners, Harry B. Caldwell and Chase Hotel Company of Illinois, who did not comprise the corporation named as defendant in this case, conveying

the hotel property, both real and personal, to Lindell Hotel Company. The consideration was $315,000, and the deed was made subject to the indebtedness, as evidenced by the bonds then remaining due. Note the recitation in the deed:

"(4) Deed of trust executed by Julius E. Tribout and Agnes C. Tribout, his wife, to Arthur W. Straus, as Trustee, and William R. Orthwein, as Co-Trustee, trustees for bondholders, dated October 1, 1921, and recorded November '29, 1921 in book 3554, page 473, to secure a principal indebtedness originally in the sum of Two Million Seven Hundred Thousand Dollars ($2,700,000.00), of which Ninety-five Thousand Dollars ($95,000.00) has been paid, leaving a balance of unpaid principal of Two Million Six Hundred Five Thousand Dollars ($2,605,000.00), with interest thereon at the rate of Seven per cent, per annum, payable semi-annually, and subject to monthly payments as provided in said Mortgage only after the month of November, 1924, all payments up to December first, 1924, having been made."

The grantee, Lindell Hotel Company, in addition to taking the property subject to the deed of trust, executed a second deed of trust to secure a portion of the purchase price. This second deed of trust was made subject to the first deed of trust and chattel mortgage. It was further provided that the grantee, Lindell Hotel Company, should pay both the interest and principal of the bonds as they fell due, and any default in the payment thereof would be considered a default under the terms of the second deed of trust.

There was evidence pro and con on the question of usury. If usury was ever exacted (we are not saying it was) it occurred prior to the completion of the hotel. The bonds, chattel mortgage and deed of trust do not disclose usury. We are of the opinion that respondents' contention must be sustained. That is, that the plea of usury, if it ever could have been successfully invoked, is not available to this defendant. The amount of the indebtedness outstanding against the property, as evidenced by the unpaid bonds, was a part of the purchase price agreed to be paid by the purchaser. Justice and equity in this case favor the rule that the defendant is estopped from invoking the plea of usury. The builders of this hotel needed over $2,000,000 for the enterprise. Such a sum is not to be obtained easily in a venture of this character. It was admitted that Straus & Company was to and did sell these bonds to the investing public. Straus & Company was in the business of underwriting such bond issues. Respondents contend that the amount claimed as usury was compensation for selling the bonds. No complaint was made at the time that usury was being exacted, and not until ten years later was that question mentioned. The property had been transferred a number of times, and on each occasion was sold subject to the indebtedness. The transfer, above mentioned, reveals that the property was sold at

a profit. To permit a plea of usury at this late date would be a rank injustice to the bondholders and at the same time would permit the purchaser of the property to obtain it at a price far less than that agreed upon by the parties. The Kansas City Court of Appeals, speaking through Judge ELLISON, in Davis v. Tandy, 107 Mo. App. 437, l. c. 443, 444, 81 S. W. 457, had the following to say:

"And any right to question the validity of a usurious contract must be based on the original debtor's right. It is personal to him and he may waive it except in instances where it has passed to some one in privity with him. [Missouri Syndicate v. Sims, 78 S. W. 1006; Veets v. Geist, 155 Mo. 27, 34; Chapuis v. Mathot, 91 Hun, 565.]

"And, as to this rule, it makes no difference that the statute declares usurious contracts void. They are void if the debtor wishes to avoid them, but they may be recognized by him as valid. He may discharge such contract by payment in full. So he may require his grantee to do so. If such debtor's property worth $1,000 should be encumbered with a usurious mortgage for $500 and he should sell it for the former sum, by receiving the latter sum from the grantee in cash and requiring him to assume and pay off the encumbrances as the remaining part of the consideration, no one would say that such grantee could interpose the plea of usury against the mortgagee. To allow such plea, in such case, would be a gross fraud enabling the grantee to obtain the property at half its agreed value. [Tonesdell v. Dowden, 47 N. J. Eq. 396; DeWolf v. Johnson, 10 Wheat. 393.] And so it has been universally held that though the grantee as privy in estate receives by transfer the debtor's right to set up the usury, he can never do so where he merely buys the equity of redemption, or, as just illustrated, assumes the usurious debt. [Webb on Usury, sec. 374.] Where one takes a conveyance reciting that it is subordinate to some other lien, he is not the purchaser of the entire title or property. [Young v. Evans, 158 Mo. 395.]"

Later, in the same opinion, at page 446 of 107 Mo. App., after reviewing cases from other jurisdictions, the court said:

"It is therefore manifest, we think, that the fact of our statute declaring the usurious mortgage to be 'invalid and illegal' has not enlarged the list of those who may plead usury."

In Reed v. Steward (Mo.), 276 S. W. 12, l. c. 15, 16 (3), this court ruled that a party purchasing property subject to a mortgage, where the indebtedness secured by the mortgage was considered a part of the purchase price, was estopped from asserting that the mortgage was void. In that case the court quoted from and approved a similar ruling in Landau v. Cottrill, 159 Mo. 308, 60 S. W. 64, where cases from other states were reviewed. This rule of law is in harmony with the great weight of authority. [27 R. C. L., pp. 288, 289.] In 66 Corpus Juris, page 322, we read:

"Thus, if the purchaser takes his deed expressly subject to the mortgage, the amount of the mortgage being allowed for in the price, he cannot set up usury as a defense to a suit to foreclose the mortgage. . . . "

In the footnotes cases supporting the text are cited from more than twenty states. In the notes we also find the following, under the heading, "Reasons For Rule," taken from New Jersey equity cases.

" 'This doctrine does not at all rest on the theory that the taint, by the conveyance, has, as between the original parties, been purged from the mortgage. On the contrary, the fact is the taint as to them still exists in all its original force, but the doctrine rests on this foundation: That the purchaser, by taking title subject to the mortgage, and retaining, out of the price he agreed to pay, sufficient money to pay the mortgage, places himself in a position where he cannot allege usury without attempting to keep back part of the money which he agreed to pay for the mortgaged lands.' [Trusdell v. Dowden, 20 Atl. 972, 973, 47 N. J. Eq. 396.] (4) It has been stated, however, that: 'The reason of the rule is obvious. The statute against usury is designed to give protection to the borrower against the greed of the lender, and not to afford any mere adventurer who may happen to slip into the seat of the borrower, a right to speculate on a violation of law which has done him no harm, and causes him no loss. When the borrower sells his interest in the land he has pledged for the payment of a usurious debt, subject to that debt, he recognizes the validity of the debt, and waives the benefit of the statute. After the party aggrieved has forgiven an injury, it would not be consonant with either justice or reason to allow a stranger to set it up for his own personal advantage. The defendant has no right to display the wrongs of another as a means of relieveing her property from a burden it was understood it should bear at the time she acquired it.' [Lee v. Stiger, 30 N. J. Eq. 610, 611.] "

We have examined the cases cited by appellant and find that the facts are different and therefore the cases are not in point. We will review a number of them. For example, Foskin v. Laessig, 32 S. W. (2d) 768, was a suit between the original contracting parties. Manufacturers' & Mechanics' Bank v. Twelfth Street Bank, 223 Mo. App. 191, 16 S. W. (2d) 104, was a suit on a check given for a gambling debt, and payment of the check had been stopped by the maker. In Securities Inv. Co. of St. Louis v. Rottweiler, 7 S. W. (2d) 484, the St. Louis Court of Appeals held that the plea of usury may be legally invoked by a person's personal representative, his heirs at law, or his trustee in bankruptcy. We have no fault to find with that ruling, but it obviously does not apply to the case before us. In Coleman v. Cole, 158 Mo. 253, 59 S. W. 106, this court held that an attaching creditor may interpose the defense of usury. In Western Storage & Warehouse Co. v. Glasner, 169 Mo. 38, 68 S. W. 917, the

court followed the ruling in Coleman v. Cole, supra. In Johnson v. Grayson, 230 Mo. 380, 130 S. W. 673, Warner, who held Grayson's note, pledged the note with plaintiff, Johnson, as collateral security for the payment of his own note of $2300. The transaction between Johnson and Warner was tainted with usury. Grayson's plea of usury was permitted, on the theory that Johnson obtained the note in a usurious transaction, and Grayson, when signing the note, for which he received no consideration, was a mere straw man aiding Warner in a real estate deal. In that opinion the court also reviewed and affirmed the holding in the case of Keim v. Vette, 67 S. W. 223, 167 Mo. 389, 1. c. 402, 403, strongly relied upon by appellant in this case. In the Keim case the facts briefly were these: Keim was the owner of certain notes which he left for a day with one Kuhn for safekeeping. Kuhn assigned them to Vette as collateral security for a loan which' was tainted with usury. The court held that under such a state of facts Keim was entitled to replevin the notes from Vette. In both of those cases the facts were entirely different from the facts in this case and every reason existed that the plea of usury should be invoked to protect innocent parties from the fraud that had been practiced upon them. Judge ELLISON of the Kansas City Court of Appeals referred to the case of Keim v. Vette in the case of Davis v. Tandy, supra, and reluctantly followed that ruling, because he was of the opinion that the statute had not enlarged the list of those who may plead usury. Judge ELLISON followed the ruling in the Keim case because it was an opinion by this court controlling the situation. The facts in the case of Davis v. Tandy made the ruling in the Keim case applicable. It will be noted, however, that not one of these cases is in point when the facts are considered upon which the rulings were based. We therefore hold that the transfer of the property, subject to the indebtedness, estopped the defendant from pleading usury as a defense to the foreclosure of the mortgage and deed of trust. It will, therefore, be unnecessary to discuss the many other questions that were presented in the case.

The judgment of the trial court is affirmed. *Cooley* and *Bohling, CC.,* concur.

PER CURIAM:—The foregoing opinion by WESTHUES, C., is adopted as the opinion of the court. All the judges concur.