### SMITH

v.

### MOTORS INS. CORP.

No. 7212.

Springfield Court of Appeals.

Missouri.

July 8, 1954.

Ward & Reeves, Caruthersville, for appellant.

R. W. Hawkins and R. H. Gowan, Caruthersville, for respondent.

McDOWELL, Presiding Judge.

This action is on a fire insurance policy for the loss sustained to plaintiff's hearse. The cause was transferred from Pemiscot County to Butler County where it was tried by a jury resulting in a verdict and judgment for plaintiff for $1,700. Defendant appealed.

Plaintiff's amended petition is based upon an insurance policy written by defendant, October 21, 1948, insuring plaintiff's 1938 LaSalle hearse-ambulance against loss by fire for $1,700. The petition states the vehicle was totally destroyed by fire October 15, 1949, while the policy was in force;

that defendant has vexatiously refused to pay the loss.

The amended answer is a general denial of liability and a separate plea that the policy of insurance sued on was not in effect at the time of the alleged loss for the reason that plaintiff had violated section (b) under "Exclusions" in the policy by giving a chattel mortgage on said hearse June 2, 1949, to Mid-Continent Finance Corporation of Kennett, Missouri, securing an indebtedness of $202.80, which chattel mortgage was still in force and effect at the date of the fire loss and was not described and declared in the policy as therein provided.

The amended reply admits the giving of the chattel mortgage described in defendant's answer and alleges that the amount to be paid was payable in six monthly instalments of $33.80; that plaintiff only received $150; that the Mid-Continent Finance Corporation intentionally collected $46.80 usurious interest on the note; that the chattel mortgage was void because of such usurious interest and did not impair plaintiff's policy of insurance.

The reply further stated that substantially all of the $150 received from the Mid-Continent Finance Corporation was used to pay off the prior mortgage mentioned in the policy and for repairs on the ambulance which enhanced its value and that said mortgage was actually a renewal or substitute for the old encumbrance; that there was no substantial increase in the amount of mortgage from that stated in the application, which created a greater fire hazard moral or otherwise.

The reply is a general denial of usurious interest and a plea of estoppel to set up the defense of usurious interest because plaintiff treated the chattel mortgage as valid and fully paid the note it secured, $67.60 of such note being paid after the fire.

The evidence consisted of the policy of insurance sued on which, defendant admitted, was in force at the time of the alleged fire. This policy provided under "Exclusions":

"This Policy does not apply:

"(b) under any of the coverages, while the automobile is subject to any bailment lease, conditional sale, mortgage or other encumbrance not specifically declared and described in this policy".

It was admitted by the parties that plaintiff gave two chattel mortgages on the hearse in question. October 21, 1948, plaintiff gave a chattel mortgage to General Motors Acceptance Corporation for $207.-90, payable in nine monthly instalments of $23.10 each, the last instalment to be due July 22, 1949. This chattel mortgage was declared and recognized in the policy. On June 2, 1949, plaintiff gave a chattel mortgage on the hearse in question to Mid-Continent Finance Corporation of Kennett, Missouri, to secure indebtedness of $202.-80, payable in six monthly instalments of $33.80 each. This chattel mortgage was not declared and set out in the insurance policy sued on and there remained due and unpaid the sum of $67.89 on this indebtedness at the time of the fire, October 15, 1949.

Plaintiff testified that he received only $150 of the $202.80 secured by the chattel mortgage given to Mid-Continent Finance Corporation; that from the proceeds of this loan he paid off the last instalment due on the first chattel mortgage given, to wit, $23.10; that he paid $25 of said money to have the motor tuned up on the hearse in question; that he bought two tires and two tubes for the ambulance; paid $31 each for the tires and $5 each for the tubes and that he actually had $30 of the money left.

As to the second mortgage given plaintiff gave this testimony:

"Q. Can you explain to the court and jury why you executed the note to them for two hundred and two dollars and eighty cents and only actually received one hundred and fifty dollars in cash? A. I can't."

It was admitted that both chattel mortgages were recorded or filed for record as required.

On cross-examination plaintiff testified:

"Q. Now, T. J., you have testified here that you only got one hundred and fifty dollars from Mid-Continent Finance Corporation? A. Yes, sir.

"Q. Is that correct? A. Yes, sir.

"Q. Do you know what the other amount, two hundred and two dollars and eighty cents, what that difference was for? A. I do not.

"Q. Do you know who you were talking to at Mid-Continent Finance Corporation on this arrangement, borrowing this money, giving this note and mortgage? A. Didn't know anyone personally there.

"Q. You had dealings with them before had you T. J.? A. Yes, sir.

"Q. You know whether or not they are brokers? A. No, sir, I didn't know.

"Q. Do you know whether or not they are agents of Mid-Continent Finance Corporation? A. No sir, I was in the office.

"Q. Do you know whether or not they charged you a brokerage fee? A. No, sir.

"Q. Do you know whether or not they charged you a brokerage commission? A. No, sir.

"Q. Do you know whether or not they charged you an investigating fee? A. No, sir.

"Q. So you just don't know what that extra amount there was for, do you? A. I don't know."

It is admitted that plaintiff paid all of the instalments due on the second chattel mortgage; that $67.80, being the last two instalments, was paid after the fire. Plaintiff testified that he never at any time questioned the validity of this note and chattel mortgage or said anything to the lender about it and that he paid the full debt.

The endorsement on the second chattel mortgage showed that the last payment was made November 7, 1949. The policy of insurance was in evidence as plaintiff's exhibit "A". The note and second mortgage was in evidence as plaintiff's exhibit "B" and "C" and the first mortgage, which was declared in the policy, was in evidence by plaintiff as exhibit "D".

In this opinion we will refer to appellant as defendant and to respondent as plaintiff, the position they occupied in the trial court.

Plaintiff makes two assignments of errors:

"I. The court erred in refusing its motion for a directed verdict at the close of the case.

"II. The court erred in giving at the request of the plaintiff instructions numbers 1, 2 and 3."

Under points and authorities plaintiff's first contention is that the trial court erred in refusing defendant's motion for a directed verdict at the close of the case because plaintiff made no submissible case for the jury.

■ In ruling upon the question of whether plaintiff made a submissible case for the jury we must disregard defendant's evidence unless it aids plaintiff's case and consider the evidence most favorable to plaintiff and favorable inferences therefrom. Ford v. Louisville & N. R. Co., 355 Mo. 362, 196 S.W.2d 163, 165; Bootee v. Kansas City Public Service Co., 353 Mo 716, 183 S.W.2d 892.

It is defendant's contention that the placing of the second mortgage on the hearse-ambulance by plaintiff suspended and made ineffective the car coverage under the policy while the second mortgage remained an encumbrance on the property.

Plaintiff admits that at the time of the fire loss sued on, there was still due two instalments on the second mortgage in the sum of $67.89, this amount being paid after the fire, in full, to wit, November 7, 1949.

Plaintiff makes this admission under point I of his points and authorities.

To sustain defendant's first allegation of error, he cites Dougherty v. German-American Insurance Company, 67 Mo.App. 526.

This was an action on a policy of fire insurance. The defense, among other things, was that plaintiff mortgaged the property after procuring the insurance, without the consent of the company. The evidence showed that at the time the policy was issued there was a mortgage upon the place, originally for $1,375, but the indebtedness had been reduced to $850 by payments. The policy provided that it should become void if the property be mortgaged after the insurance was obtained. The plaintiff executed a second mortgage for $800 and used all the money to pay the first mortgage. The two mortgages were never in force at the same time. The court held, 67 Mo.App. on page 532:

"* * * The extinguishment of the original and the giving of the new mortgage were but one transaction, not altering the situation of the property. Burns v. Thayer, 101 Mass. 426. We held that any substantial increase in the amount of the mortgage in fact from that stated in the application of insurance would avoid the policy. But here there was no increase of the amount, or of the risk, the change not, in fact, altering the original indebtedness save to decrease it. In such case, it will not be held to create a forfeiture of the policy. Bowlus v. [Phenix] Ins. Co., 133 Ind. [106] 113 [32 N.E. 319, 20 L.R.A. 400]; Russell v. [Cedar Rapids] Ins. Co., 71 Iowa 69 [32 N.E. 95].

"* * * The reason for the rule that the creation of an incumbrance in violation of the terms of the policy works a forfeiture has been thus stated: 'It goes upon the theory of an increased risk by reason of incumbrances. If a man may incumber his property to its full value, and then insure it to its. full value, it may easily be seen how it may be turned into a source of profit.' * * *

"We do not wish to be understood as stating that it would be allowable for a policy holder to discharge an incumbrance existing on the property at the time of insurance, and then, at some time afterward, as an independent and disconnected transaction, put on another incumbrance without the consent of the company. Such would be a violation of the terms of the policy."

In Bridgewater v. General Exchange Ins. Corporation, 234 Mo.App. 335, 131 S.W.2d 220, 221, decided in 1939 by the Kansas City Court of Appeals, the same question was before the court as is here presented. It was contended in the answer that the plaintiff had given two mortgages upon a car which were outstanding at the time of the fire loss and that by virtue of the provisions of the policy with respect to the existence of liens and encumbrances not noted in the policy and not consented to in writing by the company, the loss did not come within the terms of the policy. This was the sole defense pleaded. The policy in this case contained a provision excluding liability of the company for loss or damage to the property insured thereunder, "'while subject to any lien, mortgage or other incumbrance'", other than such as specifically described in the policy or "'otherwise provided by agreement in writing added hereto'".

It was contended that the placing of a mortgage on the automobile subsequent to the issuance of the policy without the consent of the defendant, would not render the policy void but merely relieve the insurer of liability for loss which might occur during the existence of such mortgage; that upon the release of the mortgage, if effective during the term of the policy, the insurer's liability for loss would again attach. The court made the following statement, 131 S.W.2d on page 222 of the opinion:

"In the instant case there were two mortgages placed upon the automobile subsequent to the issuance of the policy and without any notice to, or agreement with, defendant company with respect thereto. The proceeds from the Morris Plan mortgage,

securing a note for $275, were used for the purpose of paying off the balance of the note secured by the General Motors Acceptance Corporation mortgage which *was* described in the policy. While the Morris Plan mortgage was an existing mortgage on the car at the time of the fire and was not described in the policy, it nevertheless was merely a substitute for, or, in effect, a renewal of the General Motors Acceptance Corporation mortgage described in the policy. It was given to secure the identical indebtedness as reduced by installment payments, that had been originally secured by the mortgage described in the policy. Under such circumstances, the existence of the Morris Plan mortgage at the time of this fire loss, does not relieve the defendant of liability therefor under any reasonable interpretation of the terms of the policy. Dougherty v. German-American Insurance Company, 67 Mo.App. 526, loc.cit. 532.

"The Sprague mortgage, however, comes clearly within the mortgage clause of the policy which, by express terms, relieves defendant of liability for loss or damage to the automobile for the period the mortgage remains in effect. This mortgage has no connection with the mortgage indebtedness noted in the policy, nor had there been any subsequent agreement with defendant with respect thereto, nor had defendant any notice of its existence until after the loss. It remained of record in the office of the recorder of deeds at the time of the fire and plaintiff admitted that nothing had been paid on it at the time of the fire."

This case also held that where the liability of the company is merely suspended during the existence of the mortgage, the unearned premium need not be tendered to plaintiff.

In Zancker v. Northern Ins. Co. of New York, 238 Mo.App. 110, 176 S.W.2d 523, the court passed upon the same question as involved in the case at bar. The policy of insurance contained an exclusion clause which provided that there should be no coverage while automobile was subject to any mortgage not specifically described in the policy. The court held that such a provision was unambiguous and not subject to construction. Under the facts plaintiff had executed a chattel mortgage to secure a sum of $57.50 on the automobile covered in the policy. The note and mortgage were both contained in the same instrument. The car was burned and was almost a total loss. Upon learning of the second mortgage defendant declined liability on account thereof. The court directed a verdict for the defendant. The court made this statement of law, 176 S.W.2d on page 526 of the opinion:

"* * * The policy provides that there should be no coverage while the automobile is subject to any mortgage not specifically declared and described in the policy. The provision is not ambiguous and is not subject to any construction other than its plain meaning. The word 'while,' as used in the policy, is an adverbial modifier expressing duration. It means 'as long as,' and is not limited to the date of the issuance of the policy but refers as well to time thereafter."

The court cited, with approval, the holding in the Bridgewater v. General Exchange Ins. Corporation, supra. That is, that the giving of a mortgage under the exclusion provision of the policy, which was not described therein, would relieve the insurer of liability for any loss or damage which might occur during the existence of such mortgage, and that the policy was suspended during such time.

Usury was set up as a defense in this case but was not considered by the court because it had not been pleaded. The court, in passing upon this matter, stated, 176 S.W.2d on page 527 of the opinion:

"The infirmity of usury does not appear upon the face of the mortgage or note in this case and usury will not be presumed. The position of plaintiff in this case is controlled by the general rule that one asserting usury in order to void his contract must specifically plead and prove it. * * *" Many authorities are cited under this holding.

In Perkins v. Becker, 236 Mo.App. 786, 157 S.W.2d 550, the court was passing upon a clause in an automobile liability policy excluding coverage while automobile was being operated by any persons contrary to law or ordinance as to age. The court held that the liability of an insurer on its contract must be decided by the provisions of the contract of insurance. This statement of law was declared, 157 S.W.2d on page 553 of the opinion:

"* * * A fair and reasonable construction of the language in the above exclusion clause is that *the policy is suspended during the time the automobile is being operated by a person under the age allowed by our statute,* and *the policy* being suspended during such time, there would be no liability under the coverage clause whether the accident and damages resulted from *ownership, maintenance or use.*"

The court cited, with approval, the law as declared in Bridgewater v. General Exchange Ins. Corporation, supra.

In this case the court held that where the language of a policy is plain and unambiguous, such language must be given its plain meaning.

In Schaefer v. Home Ins. Co., 239 Mo. App. 586, 194 S.W.2d 718, the court held in passing on an exclusion clause which required the insured to keep its boat out of the water at certain times of the year and a breach of the warranty occurred, that the breach of a promissory warranty or condition subsequent contained in an insurance policy suspends the coverage of the policy during the existence of the breach. The court cited Perkins v. Becker, supra; Bridgewater v. General Exchange Ins. Corporation, supra, and many other authorities.

In Lee v. Agricultural Ins. Co., 79 Iowa 379, 44 N.W. 683, it is held that the giving of a chattel mortgage is, beyond question, an increase of the risk and a decrease of the defendant's security, because thereby the assured lessened the interest in the insured's property. The court said it was a depletion of the assured's interest in the property, to the extent thereof, from its execution and delivery.

It is contended by plaintiff that the proceeds of the second mortgage were used to pay off the balance of the mortgage described in the policy and was in effect a renewal of the mortgage described therein and, therefore, defendant was not relieved of liability from the loss occurring from the fire.

The only additional authority cited by plaintiff to sustain this contention is Talbert v. General Exchange Ins., Corporation, Mo.App., 75 S.W.2d 424, decided by this court. In 75 S.W.2d on page 429 of the opinion the court stated:

"The third instruction has to do with the mortgage for $158.65, which was given after the original policy of insurance was issued. This mortage was given to the King Motor Company upon this car together with other personal property, and proceeds of this mortgage were used to make payments on the incumbrance existing at the time the insurance was written and thus reduced the mortgage which was originally against the car. Not only did it reduce the mortgage on the car, but the mortgage was placed on the car to get money for that purpose. There was no evidence offered by defendant that the amount of the incumbrance against the car was increased. On the contrary, the evidence went to show that the incumbrance was decreased by the giving of this mortgage."

In the case at bar plaintiff gave two mortgages on his hearse. The first mortgage was given October 21, 1948, for $207.90, payable in instalments of $23.10 each. This mortgage was declared and recognized in the policy. The second mortgage, payable to Mid-Continent Finance Corporation, was given June 2, 1949, for $202.80, payable in monthly instalments of $33.80 each. This mortgage was not declared and recognized in the policy. Plaintiff paid the last instalment, $23.10, out of the proceeds of the second mortgage. This left an increase in the indebtedness, under the second mortgage, of $179.70. At the

time of the fire there was due and unpaid on the second mortgage two instalments in the sum of $67.89. The insurer knew nothing of the second transaction until after plaintiff's hearse had burned and the lien was not noted in the policy. The policy provides that it will not apply under any of the coverages while the automobile is subject to any mortgage or encumbrance not specifically declared and described in this policy. The provision is not ambiguous and not subject to any construction other than its plain meaning. The giving of the chattel mortgage is, beyond question, an increase of the risk and a decrease of defendant's security because thereby the assured lessened his interest in the insured's property. It was a depletion of the assured's interest in the property.

In Dougherty v. German-American Insurance Company, supra, 67 Mo.App. on page 533, the court said:

"* * * The reason for the rule that the creation of an incumbrance in violation of the terms of the policy works a forfeiture has been thus stated: 'It goes upon the theory of an increased risk by reason of incumbrances. * * *' * * *"

In Packard Mfg. Co. v. Indiana Lumberman's Mut. Ins. Co., 356 Mo. 687, 203 S.W. 2d 415, 416, 418, the court states the law thus:

"Insurance policies, like other contracts, receive reasonable interpretations. The ultimate aim is to ascertain the object and intent of the parties. An often quoted statement is: 'Courts are without authority to rewrite contracts, even insurance contracts, although it may appear that in some respects they operate harshly or inequitably as to one of the parties; they discharge their full duty when they ascertain and give effect to the intentions of the parties, as disclosed by the contract which they have themselves made.' * * * 'Plain and unambiguous language must be given its plain meaning. The contract should be construed as a whole; but, in so far as open to different constructions, that most favorable to the insured must be adopted. * * *' * * * 'that, absent fraud or mistake, courts were legally powerless to relieve parties from their contractual obligations; and that: "If parties will make such contracts they have no right to expect courts to disregard the law in construing them." * * * *' * * * *"

Under the law, as stated herein, the giving of the second mortgage relieved the insurer of liability of any loss or damage which might occur during the existence of such mortgage, and the policy was suspended during such time. It was a separate and distinct transaction from the first policy. The paying of $23.10 on the first mortgage did not make the transaction a mere substitution of one indebtedness for another.

■ There can be no question but that the law in this state is that where the proceeds of a second mortgage are all used to pay off an indebtedness which is declared in the policy, the company would not be released from liability. The risk would not be increased. That is not the case under the facts herein being decided. There was an increase in the indebtedness and of the risk which suspended the insurer's liability for loss during the existence of such mortgage and this suspension continued until after the fire and, therefore, we agree with defendant that the policy was not in force at the time of the fire.

Plaintiff makes the contention that the second mortgage was not a valid mortgage because of usury.

■ An examination of the evidence shows that plaintiff failed to meet the burden of proof to establish such usury. He does testify that he received only $150 of the $202.80 loan secured by the chattel mortgage but he, definitely, states that he does not know why he was only paid $150. He does not know that this was interest charge but it might have been for other services rendered plaintiff. The burden of proof was upon plaintiff to establish usury and he wholly failed to do so.

We agree with defendant that the giving of the chattel mortgage, which was not declared in the policy and which increased

the hazard of the insurer, was a violation of the terms of the policy and suspended the liability of the company so long as such encumbrance remained unpaid.

Defendant contends that notwithstanding the claimed usurious nature of this transaction, the mortgage was nevertheless an encumbrance and violated the provisions against encumbrances. Even though the mortgage be void for usury, if the note and mortgage are completed by delivery and the mortgage duly filed, as this one was, then such a mortgage violates a provision against encumbrance.

To support this contention defendant cites Lipedes v. Liverpool & London & Globe Ins. Co., 229 N.Y. 201, 128 N.E. 160, 13 A.L.R. 550.

This case holds that a mortgage void for usury is within the operation of a provision in a fire insurance policy that it shall be void if the subject of the insurance be personal property and be or become encumbered by a chattel mortgage. The basis of the decision was that the mortgage existed as a fact, and had moral efficacy in point of fact. We quote from 128 N.E. at page 160 of the opinion:

"We may assume that the chattel mortgage is void as matter of law. Sabine v. Paine, 223 N.Y. 401, 119 N.E. 849, 5 A.L.R. 1444. It may, if enforcement is resisted, lack legal efficacy, but it exists as a fact and has moral efficacy in point of fact. The reason for requiring knowledge of notice of the chattel mortgage is the same as the reason for requiring knowledge or other insurance. The facts relating to both are important to the insurance companies as bearing on the risk assumed. Property incumbered by a chattel mortgage may cease to be good moral risk. That the necessities or the ignorance of the insured have forced him into the hands of the usurer does not make the information sought a matter of indifference to the insurer, but rather the contrary. The fair meaning of the stipulations of the parties called for full disclosure by the insured."

There were strong dissenting opinions in this case.

In 29 Am.Jur., Sec. 626, page 504, the law is stated:

" * * * It has been held that a mortgage which is void on account of usury is within the operation of such a provision." 13 A.L.R. 550.

In Boley v. Bankers' & Shippers' Ins. Co. of New York, Mo.App., 23 S.W.2d 1095, 1097, the law is stated:

"Appellant's only attempt to evade the provision in the policy is by claiming that the mortgage, which she admits she executed, was of no force and effect as against her, because without consideration, and that it was executed for her protection, and is therefore not such a mortgage as contemplated by the terms of the policy. This is not a sound position, and is no defense. The provision in the policy against incumbrances is a valid one, and a breach thereof renders the policy void. Day v. National Fire Ins. Co., 216 Mo.App. 279, 264 S.W. 467; Ramer v. [American Central] Ins. Co., 70 Mo.App. 47; Secrest v. Hartford Fire Ins. Co., 68 S.C. 378, 47 S.E. 680; Lipedes v. Liverpool & London & Globe Ins. Co., 229 N.Y. 201, 128 N.E. 160, 13 A.L.R. 550. In the Day Case, supra, plaintiff claimed he did not know that he had executed a mortgage, and in the Ramer Case, supra, that the provision in the policy had not been read; and in the Secrest Case, supra, it was held that the execution of a chattel mortgage, although afterwards set aside as a fraud against creditors, was a breach of the terms of the policy; and in the Lipedes Case, supra, it was likewise held to be a breach of the terms of the policy against incumbrances, where the assured gave a chattel mortgage, void for usury.

"In the present case it must be held that plaintiff executed her mortgage in violation of the terms of her insurance policy, and that she is estopped to deny that it was for a valid consideration, and is not entitled to recover. * * *"

In the case at bar the giving of the second mortgage increased the hazard assumed by the insured. It was not a renewal of an existing encumbrance. It clearly violated the terms of the policy and even if it had been proved that the encumbrance so given was usurious and void, we think that plaintiff, under the facts in this case, was estopped to set up such defense. Plaintiff voluntarily gave the mortgage. It was recorded. Plaintiff treated the mortgage as a valid and existing lien and, after the fire, which caused the loss, plaintiff continued to treat the mortgage as a valid lien and paid the full amount of the indebtedness secured. Plaintiff admitted that at no time did he ever complain of usury in this transaction to the holders of the mortgage. Straus v. Tribout, 342 Mo. 511, 116 S.W.2d 106.

Under point III, defendant contends that plaintiff made all instalment payments on the second chattel mortgage, four of the instalment payments being made before October 15, 1949, the date of the fire and the last two instalment payments, amounting to $67.60, paid after the fire on November 7, 1949, and at no time prior to the filing of this action, did plaintiff complain or protest that any part of the obligation was usurious charge of interest, but he treated, and held out the mortgage and note, as valid instruments; that he has never made any claim or sought recovery of the usurious portion of the obligation; that under these facts plaintiff waived any right to claim invalidity of the mortgage on account of usury.

To support this contention plaintiff cites Straus v. Tribout, supra.

We agree with this contention but we think it needless to go into the discussion thereof for we have held that the defense of usury is an affirmative defense; that the burden of proof was upon plaintiff to show by competent evidence that the mortgage was void for usury; that there is not substantial evidence to establish usury and, therefore, this defense cannot aid plaintiff.

Having held that plaintiff did not make a submissible case we deem it unnecessary to pass upon the other assignments of error relating to instructions.

Judgment reversed and remanded with instructions that judgment be entered for defendant.

BLAIR and STONE, JJ., concur.