Sam GALATI, Plaintiff-Respondent,

v.

**NEW AMSTERDAM CASUALTY COMPANY, Defendant-Appellant.**

No. 31709.

St. Louis Court of Appeals.

Missouri.

July 21, 1964.

Motion for Rehearing or to Transfer to Supreme Court Denied Aug. 14, 1964.

Moser, Marsalek, Carpenter, Cleary & Jaeckel, F. Douglas O'Leary, St. Louis, for defendant-appellant.

Jerome J. Duff, Walter S. Berkman, St. Louis, for plaintiff-respondent.

L. F. COTTEY, Special Judge.

From a judgment on an automobile collision policy in favor of the insured, the insurer appeals. The pertinent facts, all of which are stipulated or established by uncontradicted evidence to which no objection was made, are as follows:

Sam Galati, the plaintiff, leased a Chevrolet automobile from Manchester Lend-Lease Company on August 1, 1957, for a term of two years under a written contract providing for monthly rental payments of $75 each during the term of the lease. Title to the vehicle remained vested in the lessor. The contract, which has been lost and is not before us for examination, admittedly contained a provision allowing Sam to purchase the car at any time during the life of the lease at a figure to be computed by some no-longer-remembered formula whereby a portion of the rental payments was credited on the purchase price. At the time the lease was entered into Sam was required to obtain, and did obtain from appellant, a policy of collision insurance on the car payable to himself and Manchester Lend-Lease Company as their interests might appear. That policy was in force at all times herein mentioned. The specific provision of it with which we are concerned is denominated Exclusion (1). It recites that the coverage should not apply " * * * if the automobile is or at any time becomes subject to any bailment lease, conditional sale, purchase agreement, mortgage or other encumbrance not specifically declared and described in this policy."

Sam used the automobile for "about seven or eight months" and made his rental payments regularly. At the end of that time his aunt, Mrs. DeBlasi, expressed an interest in buying it and Sam cooperated with her fully in that project. Together they went to Manchester Lend-Lease Company where, as Sam testified, " * * * We told them that she was going to take over the car and pay the balance * * *"; that " * * * She was going to buy the car." The Company agreed. By application of the formula mentioned above it was ascertained that the sale price of the automobile at that date was $2,335.97. Mrs. DeBlasi paid the full amount on the spot, signed "some papers" of undisclosed import, and was informed by the Company's representative that in due course she would

receive the certificate of title. Sam drove her home, turned over to her the car and his only set of keys, testified that " * * * as far as I was concerned it was then her car," and never thereafter expressed or displayed any further interest in it until the filing of this suit. Two days later Mrs. DeBlasi demolished the car in a collision. Sam's policy had never been assigned to her and she had no insurance of her own. The certificate of title to the car, duly assigned as of the date of the sale, was received by her through the mail some two weeks after the accident.

Sam instituted this action a year later in the Magistrate Court of the City of St. Louis, joining Manchester Lend-Lease Company as a co-plaintiff. That Company, however, seems to have gone out of business in the meantime, and we gather that it was named as a co-plaintiff without its knowledge or consent. In any event it was stricken as a party plaintiff and the cause has since been prosecuted in Sam's name alone. His petition proceeds upon the theory that he was the lessee of the automobile at the time of the collision and that it was then " * * * being operated with the (his) permission and consent * * *." The cause was submitted to the Magistrate upon an agreed statement of facts which concluded with this recitation: " * * * The defendant has denied payment of the claim because of exclusion (I) as contained on page 3 of said policy." No other defense was suggested; no answer was filed.

The result of that submission was a judgment in Sam's favor from which the insurer appealed to the Circuit Court. There both sides filed motions for summary judgment to which were attached a copy of the agreed statement of facts entered into in the Magistrate Court and the depositions of Sam and Mrs. DeBlasi. The insurer's motion specified exclusion (1) as a defense to the policy, and then recited: "Plaintiff Sam Galati parted with all interest in the automobile in question prior to the collision mentioned in plaintiff's petition and sustained no loss as a result of said collision; therefore, plaintiff does not have sufficient interest to maintain this cause of action or to recover under defendant's policy." We construe that recitation as an allegation that Sam had no insurable interest in the automobile at the time the loss occurred. The point was evidently not stressed at the hearing on the motion, however; at any rate the trial judge made no mention of it in his memorandum opinion. Instead, he concluded that the controlling " * * * issue in the case is the application of exclusion clause (1) * *," and he disposed of it by holding that the language of the clause was " * * * ambiguous and of doubtful meaning * * " when examined against the background of the conceded facts, and therefore to be construed against the insurer. The insurer's motion was accordingly denied; Sam's motion was sustained, and from the ensuing judgment in his favor this appeal has been perfected. Appellant-insurer's brief presents two points for our consideration.

In Point 1 appellant renews its insistence that the exclusion clause is a complete defense to the action because the automobile was subject to a "purchase agreement" at the time the loss occurred. No authority defining that term within the framework of facts similar to those in this case has been called to our attention, and we have found none. Of course, in the light of the fact that no certificate of title was delivered to Mrs. DeBlasi at the time the purchase money was paid, the sale was void. Sec. 301.210, RSMo 1959, V.A.M.S.; State ex rel. Connecticut Fire Ins. Co. of Hartford, Conn. v. Cox, 306 Mo. 537, 268 S.W. 87, 90, 37 A.L.R. 1456; Still v. Travelers Indemnity Co., Mo., 374 S.W.2d 95, 99. But a "purchase agreement" and a "void sale" are surely not the same thing, or at any rate not necessarily so, and to ask us to define the one term so as to include the other is implicitly to concede, it seems to us, that the language of the policy provision is ambiguous. We

concur with the learned trial judge in holding that an ambiguous provision cannot avail as a policy defense. Appellant takes the position in this court, however, that the invalidity of the sale is of no significance in assessing the merit of its defense. It argues that any agreement looking to the sale of the car constituted an "encumbrance" on it—defined, in turn, as "a burden or charge on property"—without apparent regard to whether such agreement was valid or void, executed or executory. In support of that proposition a number of authorities are cited, including a 24-page Annotation found at 16 A.L.R.2d 738; but none touches the question before us. They deal with mortgages and liens of similar character which are clearly definable as "a burden or charge on property"—which work "a depletion of the assured's interest in the property" and a corresponding "increase in the risk" to the insurer, as, typically, in Smith v. Motors Ins. Corp., Mo.App., 270 S.W.2d 128 —and hold, with near unanimity, that a provision excluding coverage in the event the automobile is subjected to such an encumbrance is valid; with all of which we have no quarrel. But as we understand it we are invited by this approach to rule not only that a "purchase agreement" was in effect at the time the loss occurred in this case, but also that such agreement is clearly within the intendment and commonly understood meaning of the terms "mortgage or other encumbrance" as used in the exclusion clause. We think the settled rules of construction of insurance contracts do not allow us to accept that invitation. "* * * [W]here there is a clause in a policy providing for a forfeiture, it will be enforced only when required by the strict letter of the contract and it will not receive any aid by judicial construction. * * * *" 45 C.J.S. Insurance § 657, p. 573.

■ Moreover, although the point has not been suggested by the briefs, it is clear that both sides have treated this

case from its inception as involving a policy issued to Sam alone, or, what amounts to the same thing, as vesting in him separate and severable rights which he is authorized to assert, and indisputably has asserted, independently of Manchester Lend-Lease Company, his co-insured. It follows, as a logical corollary to that theory, that any act done exclusively by Manchester Lend-Lease Company is, in effect, an act done by a stranger to the contract, and cannot be relied upon to defeat Sam's separate and independent rights. Sam had no title to the car; he could neither sell it nor effectively agree to sell it. Any sale of the car, or attempt to sell it, or agreement to sell it could only have been made, or undertaken, or consummated by the owner, Manchester Lend-Lease Company. Whether such an act on its part would have defeated its own right to recover under the policy we need not decide because no such right is asserted here and Manchester Lend-Lease Company is not a party to the suit.

■ Appellant's Point 2 combines two wholly unrelated propositions. As background for the first of these it is necessary to say that in the course of her deposition Mrs. DeBlasi testified that Sam has promised to refund her loss out of his anticipated recovery in this suit. Contending that in the light of the void sale Mrs. DeBlasi was a "bailee" of the automobile, appellant argues that this suit has really been brought for her benefit in violation of Condition 17 of the policy which reads: "The insurance afforded by this policy shall not enure directly or indirectly to the benefit of any * * *, bailee liable for loss to the automobile." For two reasons that proposition is without merit: First, because it was never suggested in the trial court but made its maiden appearance in appellant's motion for new trial; and Second, because the disposition that Sam may make, or may have agreed to make, of the money he seeks to recover in this suit is not a matter of legitimate concern to the insurer.

For its second proposition under Point 2 appellant says that Sam's " * * * interest had been terminated prior to the accident * * *" and, consequently, " * * * there was no loss sustained by any person entitled to recover under the policy. * * *" We have construed similar language in the insurer's motion for summary judgment, quoted in an earlier paragraph of this opinion, as raising the issue that Sam had no insurable interest in the automobile at the time the loss occurred. And although the term "insurable interest" has nowhere been used in the pleadings, proceedings or briefs in this case, and although not a single decision has been cited in support of the proposition that Sam had no insurable interest in the property at the time of the loss, or that such an interest is vital to his recovery, we have concluded that the point is nevertheless before us for consideration on this appeal; but only because it is impossible for the insurer to waive it. " * * * Insurable interest is a requirement of public policy against a gambling contract *and cannot be waived.*" (Emphasis ours.) Estes v. Great American Ins. Co. of New York, Mo.App., 112 S.W.2d 153, 156. " * * * To hold otherwise would abrogate the rule. * * *" Woods v. Washington Fidelity Nat. Ins. Co., Mo. App., 113 S.W.2d 121, 123.

"It is a fixed rule of insurance law that insured must have an interest of some kind in the subject matter of the insurance. An insurable interest on the part of the person taking out the policy is essential to the validity and enforceability of the contract or policy. * * *" 44 C.J.S. Insurance § 175, p. 869. " * * * As a prerequisite to the enforcement of an insurance contract, public policy demands that the insured have an insurable interest, otherwise the contract would become a gambling contract and void. * * *" American Central Ins. Co. v. Kirby, Mo. App., 294 S.W.2d 556, 560. Furthermore, in the case of property insurance as distinguished from life insurance, " * * * an insurable interest must exist both at the time of the making of the contract and at the time of loss *. * *.*" 44 C.J.S. Insurance § 175c, p. 871; Becker v. Farmers' Mut. Fire Ins. Co. of Rock Tp., Mo.App., 99 S.W.2d 148, 152. The necessary interest in an automobile exists when, but only when, the insured " * * * derives a benefit from the existence of the vehicle, or would suffer a loss from its destruction. * * *" 44 C.J.S. Insurance § 177, p. 873. " ' * * * "The loss must not be indirect or sentimental, but direct and actual. * * *"'" American Central Ins. Co. v. Kirby, supra, 294 S.W.2d p. 561. It must be a "pecuniary loss." When the insured parts with his interest in the insured property he stands as though he had never had any right in it, and from that moment forward his policy is void as a mere wagering contract. Estes v. Great American Ins. Co. of New York, supra, 112 S.W.2d p. 157.

There can be no doubt on the record before us that Sam acquired two, and only two, interests or rights in the automobile under his original lease: First, the right to its possession and use; Second, an option to purchase it. He voluntarily surrendered both of those rights to Mrs. DeBlasi two days before the car was damaged. As he put it, "It was then her car, as far as I was concerned." Indeed it was, as far as he was concerned and hence as far as this suit is concerned. The owner's failure to make timely delivery of the title certificate to Mrs. DeBlasi does not alter the fact that she acquired all the rights Sam had. There was no way thereafter that he could " * * * derive a benefit from the existence of the vehicle * * *." Nor was there any way he could " * * * suffer a loss from its destruction. * * *" The Manchester Lend-Lease Company, having participated willingly and actively in the transfer of Sam's rights to Mrs. DeBlasi, and having received from her the full value of the car, could in no conceivable way recover from him for its subsequent loss. He was no longer " * * * exposed to the danger of the loss against which he was indemnified * * *." Key ex rel. Heaton

v. Continental Ins. Co., 101 Mo.App. 344, 353, 74 S.W. 162, 165. His insurable interest had terminated. He owned nothing, he lost nothing, and he can recover nothing.

The judgment is reversed.

RUDDY, P. J., and ANDERSON, J., concur.